**TEXAS OSAGE CO–OPERATIVE ROYALTY POOL, Inc., et al. v. CRIGHTON et al.**

No. 4283.

Court of Civil Appeals of Texas.

April 12, 1945.

Rehearing Denied May 9, 1945.

House, Mercer, Edwards & Irvin, of San Antonio, for appellants.

W. N. Foster, and J. L. Pitts, both of Conroe, and L. C. Kemp, of Houston, for appellees.

COE, Chief Justice.

This is a suit in trespass to try title, involving an undivided one-half mineral interest in several tracts of land in the counties of Montgomery and San Jacinto. Appellants, Texas Osage Co-Operative Royalty Pool, Inc., hereinafter referred to for brevity as Osage and the Flagg Oil Company of Texas, hereinafter referred to as Flagg, filed their petition in trespass to try title, claiming title to an undivided one-half interest in the oil, gas and other minerals in the Tucker survey, in Montgomery County, Texas, and sought judgment against H. M. Crighton, M. O. Bennette, Mrs. Carrie Bennette, W. N. Foster, Mrs. Audrey Gooden, and husband Harold W. Gooden, and the Texas Company, appellees herein. Appellees answered by general denial and not guilty and by cross-action claimed title to all the minerals in said survey and other tracts of land in Montgomery and San Jacinto Counties and sought judgment against appellants therefor. This suit arose as follows:

The appellees here early in 1943 instituted suit against one E. M. Purswell, asserting that he was an interloper and trespasser upon the John C. Tucker survey owned by them. Purswell answered and set up a cross-action against the plaintiffs in that suit and the Osage and Flagg companies, appellants here, and the said Osage and Flagg companies filed a cross-action against the plaintiffs, Crighton et al., seeking recovery of one-half of the minerals underlying the Tucker survey. Early in 1944 the court entered an order of severance, directing that the cross-action of Osage and Flagg against Crighton et al. should be tried in a separate suit and directing that the parties plead therein and that the Osage and Flagg companies should occupy the position of plaintiffs and the other parties that of defendants. Thereafter appellants as plaintiffs below filed their petition in trespass to try title against appellees as defendants, seeking recovery of one-half of the minerals in the Tucker survey of 640 acres. Appellees answered by denial and plea of not guilty and by cross-action against the plaintiffs, sought recovery of all the minerals in the Tucker survey and in addition thereto all the minerals in the other land described in their said cross-action, to which cross-action the appellants filed pleas of denial and not guilty. Other facts will be set out in connection with the points hereinafter discussed.

Upon trial before a jury, the court refused the motion of appellants to strike the trustee's deed under which appellees claim title; also their motion for instructed verdict and granted appellees' motion for instructed verdict and rendered judgment for appellees. Appellants have duly perfected an appeal from said judgment.

Appellants and appellees deraign from a common source of title, or claims of title, to the mineral interest in controversy in this suit. J. O. H. Bennette is the common source. All of said lands and the minerals therein, title to which was vested in J. O. H. Bennette, were the community property of said Bennette and his wife, Irene Bennette, who died sometime during the year of 1931.

On May 30, 1927, J. O. H. Bennette and wife, Mrs. Irene Bennette, executed their deed of trust conveying to H. J. Bruce, trustee, all the mineral interest involved in this suit and all of the lands containing them. Said deed of trust was given to secure the payment of an indebtedness to N. H. Martin and W. B. Hamilton, evidenced by three notes of J. O. H. Bennette and Howard Bennette, of even date with said instrument, aggregating $16,000. Said indebtedness, except a small part, not having been paid, J. O. H. Bennette and wife, joined by Howard Bennette on October 10, 1930, executed their renewal note for $15,650, payable to the order of N. H. Martin, and on November 13, 1930, said Bennette and wife, to secure said last-mentioned note, executed their renewal deed of trust conveying said property to H. J. Bruce, trustee.

The first-mentioned deed of trust was regularly filed in Montgomery County, Texas, on June 1, 1927, and duly recorded. The other was filed for record in Montgomery County on November 13, 1930, and duly recorded. The former was filed in San Jacinto County, Texas, on June 15, 1927, and the latter was filed in said county on April 24, 1931, and both were duly recorded. All the mineral deeds under which appellants claim, which were general warranty deeds, were taken by them from J. O. H. Bennette after the original deed of trust of 1927 was made, filed and recorded in both Montgomery and San Jacinto Counties, but prior to the second deed of trust, such deeds conveyed to it an undivided one-half of the minerals in the lands involved in this suit. Flagg acquired its interest in the minerals from Osage. The note exe-

cuted by J. O. H. Bennette and wife, joined by Howard Bennette, on October 10, 1930, was payable in monthly installments of $750, including accrued interest to date of payment, the first installment being due and payable on or before the 10th day of November, 1930, and one installment to become due and payable on or before the 10th day of each succeeding month thereafter until the whole principal sum was paid. On the 29th day of December, 1931, H. J. Bruce, the trustee named in both deeds of trust, executed an instrument in which he declared that he was unable to act in the capacity of trustee and that he refused to continue to act in such capacity in such deed of trust and requested the holder of said indebtedness to appoint a substitute trustee to act in his place and stead, which instrument was duly recorded in the deed records of Montgomery and San Jacinto Counties. On the same day N. H. Martin, the owner of the renewal note, appointed H. D. Creath as substitute trustee. Upon the request of N. H. Martin, H. D. Creath substitute trustee, in accordance with the provisions of the deed of trust, posted notice of sale of all lands described in said deed of trust, to be made on February 2, 1932. On January 30, 1932, J. O. H. Bennette filed suit against N. H. Martin and H. D. Creath in which he prayed for a writ of injunction restraining the defendants, Martin and Creath, their servants, agents and employees from making sales of any of the lands described in said deed of trust, and that on a final hearing said injunction be made permanent, and on said date the judge of the district court of Montgomery County issued a temporary restraining order, restraining the defendants from selling said lands under said deed of trust, said order to be in force and effect until the first day of the next regular term of court in Montgomery County. A proper bond was filed and a temporary restraining order issued as ordered by the court. On March 4, 1932, J. O. H. Bennette executed a deed conveying all the lands covered by the deed of trust herein mentioned to his sons, Howard and Morgan Bennette. On the 21st day of March, 1932, the injunction suit of J. O. H. Bennette v. Martin and Creath was dismissed at plaintiff's request by the court in vacation. On April 5, 1932, H. D. Creath, as substitute trustee in the deed of trust of November 13, 1930, executed a deed to N. H. Martin covering all the lands described in the deed of trust, reciting in said deed that after having given notice in accordance with the terms of said instrument, he sold the property to N. H. Martin at public sale at the court house door in Conroe, Montgomery County, Texas. On April 15, 1932, W. B. Hamilton quitclaimed to N. H. Martin. Thereafter, on April 30, 1932, N. H. Martin conveyed all of said land to H. M. Crighton who, as the undisputed evidence shows, holds such title as he acquired thereby in trust for himself and the other appellees jointly.

On June 11, 1932, the appellants filed a suit in the district court of Montgomery County against J. O. H. Bennette and wife, Irene Bennette, Howard Bennette, Morgan Bennette, N. H. Martin and the Humble Oil & Refining Company. Their petition set up a fraudulent conspiracy on the part of the defendants to divest plaintiffs of their mineral interests in the lands described in said petition, which included all the lands and minerals at issue in this suit. Answers were filed by several of the defendants. Said suit remained pending on the docket of the court for a number of years but service was never had on all of the defendants and the case was never set down for trial and in 1936 said suit was dismissed. The appellants knew of the proposed sale of the lands involved herein before such sales were made and knew of the sale soon after it was made, which was shown by the undisputed evidence in the trial of this case.

Appellants complain in their first, second and third points of the action of the trial court in instructing a verdict for appellees and the overruling of appellants' motion for an instructed verdict, and the refusal of the trial court to strike the substitute trustee's deed dated April 5, 1932, contending that such sale was not supported by the necessary legal advertisement, the notices of sale being posted on March 13, 1932, in violation of an injunction of the district court of Montgomery County, granted on January 30, 1932, which remained in effect until March 31, 1932. The appellees counter with the proposition that the injunction granted by the district court restraining the trustee from selling the property at the time for which sale was originally advertised (February 3, 1932) constituted no bar to the sale of April 5, 1932, (a) because notices of sale posted before the injunction was dissolved were valid acts under the deed of trust—valid ab initio when the injunction was dissolved; (b) because the terms of the

restraining order enjoined the substitute trustee from selling said property and a mere advertisement of the sale was not in itself a violation of the injunction, and further that in as much as suit filed by J. O. H. Bennette January 30, 1932, was purely an injunction suit, the judge of the district court of Montgomery County was without power or authority to grant a restraining order without a hearing, and without notice when it affirmatively appeared from the petition that both of the defendants therein named were citizens of Wichita County, Texas, and not residents of Montgomery County, or of the ninth judicial district, and therefore such restraining order was void and constituted no bar to the readvertisement and sale of the land under the terms of the deed of trust, and by their second counter point challenge the right of appellants to question the sufficiency of the notice given.

The view we take of the law applicable to appellants' contention as to the insufficiency of the notice of sale renders it unnecessary for us to discuss the matters raised in appellees' counter proposition except the proposition raised in appellees' second counter point. As we view the evidence in this case, it affirmatively appears that J. O. H. Bennette, the mortgagor, N. H. Martin, the beneficiary in the deed of trust, as well as H. D. Creath, the substitute trustee, were satisfied with the notice given by the substitute trustee of the sale made by him, in fact the evidence shows that J. O. H. Bennette, the mortgagor, dismissed the injunction granted by the judge of the district court of Montgomery County in order that the sale might be made by the substitute trustee without being in contempt of the court granting such order. The evidence further strongly suggests that the posting of the notices by the substitute trustee was by agreement of all the parties concerned in the injunction proceeding. At least no objections were raised by either. The evidence conclusively shows that the Osage company had knowledge of the proposed sale by the substitute trustee before it was made, and of the sale soon after it was made, and raised no objections thereto until it and the Flagg company filed its suit referred to in the preliminary statement seeking to set such sale aside. After the dismissal of this suit, the appellants paid no taxes on the mineral interest here involved and Osage negotiated with J. O. H. Ben-

nette by correspondence looking to having his headright certificates in their pool reduced in the proportion that the lands sold under said deed of trust bore to the whole of the lands conveyed to Osage by said Bennette. (Mr. Bennette had conveyed a mineral interest to appellants in land other than those involved in this suit.) There is no contention that the lands were sold for an inadequate consideration nor that any other injustice resulted from the notice given.

Among other authorities, the appellants rely on the authority of Estelle v. Hart, Tex.Com.App., 55 S.W.2d 510, in support of their contention that under the facts of this case they have a right to question the validity of the sale under the deed of trust because of the manner in which notice of sale was given. The question of the sufficiency of notice of a trustee's sale was not before the court in the last-mentioned case. The want of authority in the substitute trustee to make the sale under the deed of trust was the only issue decided by the court. Under the facts of that case the court held that the substitute trustee having no authority to act under the deed of trust his deed was void and that a subsequent lienholder could take advantage of such defect in the sale to defeat the trustee's deed. We do not think the court in writing that opinion meant it as authority for the proposition that a subsequent vendee of a mortgagor could, in a collateral attack twelve years after the sale was made and with full knowledge of said sale during all of this period of time, complain of the sufficiency of the notice of sale where it was given in a manner satisfactory to all parties to the deed of trust.

In the case of Walker v. Taylor, Tex.Civ. App., 142 S.W. 31, 33, writ refused, the court held: "Notices of the sale were primarily for his (mortgagor's) benefit, and they were posted in the manner that he desired. We do not see what right a second mortgagee has to attack the validity of the sale under the circumstances of this case." It further said: "The strictness required in following the terms of the power granted by the deed of trust is to protect the property of the mortgagor, and when he is satisfied no one else can with reason complain." We are of the opinion that in a collateral attack, such as this was, a subsequent vendee will not be heard to complain of the manner of notice given of trustee's sale under facts such as are pre-

sented here. Morris v. Hastings, 70 Tex. 26, 28, 7 S.W. 649, 8 Am.St.Rep. 570; Moore v. Johnston, 12 Tex.Civ.App. 694, 34 S.W. 771, 773; Radford Grocery Co. v. Shaw, Tex.Civ.App., 9 S.W.2d 419; Shaw v. Ball, Tex.Com.App., 23 S.W.2d 291; Bookhout v. McGeorge, Tex.Civ.App., 65 S.W.2d 512, 513.

■■ By appellants' fourth, fifth and sixth points, they challenge the action of the trial court in granting appellees' motion for instructed verdict and overruling appellants' motion for instructed verdict, and in overruling their motion to strike the substitute trustee's deed dated April 4, 1932, contending that said deed was void in that the appointment of the trustee who made the sale was unauthorized as no request was made of the named trustee to act. We recognize the rule that the terms of the trust deed must be strictly complied with in order to give the power to a substitute trustee to make sale of the property described in the deed of trust. We are of the opinion that the evidence in this case is sufficient to show that the terms of the deed of trust were complied with in the appointment of H. D. Creath as substitute trustee. H. J. Bruce was named as trustee in the deed of trust under which sale was made. By written instrument dated December 29, 1931 (being at a time he had power to act under the deed of trust) and duly of record in both Montgomery and San Jacinto Counties, said Bruce declared he was unable to act as trustee and that he refused to act in that capacity. On the same day the note holder, N. H. Martin, by written instrument reciting the inability and refusal of H. J. Bruce to act as trustee, appointed H. D. Creath as substitute trustee. The deed of trust expressly authorized the note holder, in case of the trustee's refusal or failure to act, to appoint a substitute trustee in writing, with all the powers of the original trustee. That instrument further provided that all recitals made in a conveyance by the trustee of prerequisites to the sale, or as to the breach or nonperformance of any of the covenants set forth, or as to the request of the trustee to enforce this trust, or as to the proper and due appointment of any substitute trustee, or as to any other preliminary act or thing shall be taken in all courts of law or equity as prima facie evidence that the facts so stated or recited are true. The deed executed by the substitute trustee to N. H. Martin recites that the named trustee, H. J. Bruce, had refused to act and that the note holder had appointed H. D. Creath as substitute trustee. In the absence of testimony tending to show that the named trustee was not properly requested to act, the foregoing evidence was sufficient proof that proper request was made of the named trustee to act and his refusal so to do and thereby, under the terms of the deed of trust, authorized the holder of the note to appoint a substitute trustee. Wiener v. Zweib, Tex.Civ.App., 128 S.W. 699; Id., 105 Tex. 262, 141 S.W. 771, 147 S.W. 867; McCollum v. Jones et al., Tex.Civ.App., 141 S.W. 1030; Southland Lumber Co. v. Boyd, Tex.Com.App., 244 S.W. 119; Wilson v. Armstrong, Tex. Civ.App., 236 S.W. 755, 758.

■ By appellants' seventh, eighth and ninth points, they challenge the correctness of the trial court in granting appellees' motion for an instructed verdict and in overruling appellants' motion for an instructed verdict, and in overruling appellants' motion to strike the substitute trustee's deed dated April 5, 1932, contending that that deed was ineffectual to foreclose the interest of appellants in said property as it was made under deed of trust executed after the mineral deeds to appellants were executed and recorded. Appellees counter with the proposition that the deed of trust of May 30, 1927, executed by J. O. H. Bennette and wife, and the lien created thereby, were merged into and became a part of the deed of trust of the same parties of November 30, 1930 (the latter deed of trust being the one under which the sale was made); that the latter instrument extended the indebtedness still existing and extended a renewal of the lien of the former instrument. The deed of trust of November 13, 1930, expressly recites that it and the note evidenced thereby were given for the purpose of extending the indebtedness evidenced by the notes described in the deed of May 30, 1927, and expressly provided that all of that indebtedness and liens were merged and incorporated into and made a part of the new note and deed of trust lien as evidenced by the instrument of November 13, 1930, and that said indebtedness and lien are continued in full force and effect, and it expressly provided that the former liens so extended and merged are not released by the new note and deed of trust. The notes secured by the original deed of trust were dated May 30, 1927, and were due and payable one, two and three years after date.

Appellants contend that in as much as the sale was made under the deed of trust of November 13, 1930, that it did not divest the mineral interest acquired by the appellants prior thereto. We are unable to agree with them in this contention. While the second vote executed by J. O. H. Bennette and wife and Howard Bennette was made payable to N. H. Martin, and the note of May 30, 1927, was made payable to N. H. Martin and W. B. Hamilton, we are of the opinion that the debt and lien of May 30, 1927, was extended and embraced within the note and deed of trust of November 13, 1930, and that the sale as made by the substitute trustee April 5, 1932, under the deed of trust dated November 13, 1930, had the effect of foreclosing the lien as it existed on May 30, 1927, and thereby extinguished appellants' interest in one-half of the minerals which they had acquired from J. O. H. Bennette after the execution and recording of the deed of trust of May 30, 1927. Revised Civil Statutes, Art. 5522; Texas Land & Mortgage Co. v. Cohen, 138 Tex. 464, 159 S.W.2d 859; T. A. Hill State Bank of Weimar v. Schindler, Tex. Civ.App., 33 S.W.2d 833; Wilkinson v. First Nat. Bank, 118 Tex. 202, 13 S.W.2d 346; Stone v. Watt, Tex.Civ.App., 81 S. W.2d 552.

By appellants' points Nos. 10 and 12, which they group together and will be so treated, they contend that the court erred in instructing the verdict for appellees because of the agreement between Howard and Morgan Bennette and H. M. Crighton and between the latter and N. H. Martin, contending that it amounts to nothing more than an extension of the indebtedness secured by the deed of trust against the property and the sale thereunder, and did not cut off the rights of appellants, and that it was error for the court to instruct a verdict for appellees because the superior equitable title in the property in controversy always remained in J. O. H. Bennette and/or Howard and Morgan Bennette regardless of the trustee's sale of April 5, 1932, and because, they contend, this record discloses a collusion to cut off the rights of appellants as a matter of law. The record reveals that on February 16, 1932, H. M. Crighton as agent and attorney in fact for J. O. H. Bennette, entered into an agreement with Humble Oil & Refining Company to lease some of the Bennette lands; in that agreement, in connection with the agreement with reference to the

titles to the land, the deed of trust securing the indebtedness to Martin was mentioned and that a sale thereunder was contemplated no later than the first Tuesday in May, 1932, and that Crighton would endeavor to become the purchaser at said sale. Before this agreement was consummated, however, J. O. H. Bennette on March 4, 1932 (his wife Mrs. Irene Bennette having died in 1931), conveyed the land to Howard and Morgan Bennette. On the same date Howard and Morgan Bennette entered into an agreement with H. M. Crighton wherein the said Crighton bound himself to use his best efforts to obtain the money to buy in the land covered by the deed of trust executed by J. O. H. Bennette and wife for the benefit of N. H. Martin when sold by the trustee in said deed of trust. It also referred to power of attorney that day executed by Howard and Morgan Bennette in which they had appointed the said Crighton as their agent and attorney in fact to sell leases and minerals in and under all the lands owned by them in Montgomery and San Jacinto Counties, and further agreed that the said Crighton should retain a sufficient amount of the moneys received from any such sales to repay him for the purchase money for the lands covered by the deed of trust, together with eight per cent interest, and further to apply $500 to the satisfaction of a debt owed by said Bennettes to the firm of Foster & Williams. Said agreement further provided that after such debts had been liquidated that Crighton should hold the land, if purchased by him, for himself and said Bennettes in equal proportion. On March 12, 1932, Crighton entered into an agreement with Martin in which he agreed to secure a dismissal of the injunction suit and allow a sale under the deed of trust in consideration of such services Martin agreed to purchase said lands at the trustee's sale, providing it could be bought for a consideration not in excess of $19,000, and gave Crighton an option to purchase said lands from him on or before May 3, 1932, for a consideration of $18,000. Under this agreement the injunction suit of Bennette v. Martin and Creath was dismissed. The sale was made by Creath as substitute trustee, Martin becoming the purchaser at such sale. On May 3, 1932, Martin executed a deed conveying all of said lands to H. M. Crighton for the consideration of $18,000.

Appellants advance three reasons why the above proceeding did not cut off the

rights of appellants in and to the undivided one-half of the minerals in and under the lands described in the deed of trust, which are substantially as follows: (1) That said transaction amounted to nothing more than an extension of the indebtedness until May 3, 1932, which was then paid, thereby leaving their mineral interests unaffected by the substitute trustee's sale; (2) that such arrangement had the same effect as if Howard and Morgan Bennette had paid off the indebtedness before the trustee made the sale; and (3) that the foregoing facts show a collusion as a matter of law between the parties involved to cut off the title of the appellants, and that such sale made solely for that purpose would not pass any title. We will discuss these propositions in their order.

We cannot agree with appellants in their contention that the foregoing facts amounted merely to an extension of the indebtedness. It is urged by the appellants that Howard and Morgan Bennette assumed the indebtedness secured by the deed of trust as a part of the consideration for the deed from J. O. H. Bennette to them. The deed itself recites a consideration of a promissory note in the sum of $8,000, and provides that the lands therein described are conveyed subject to any and all liens existing against them, whether contract liens, judgment liens or tax liens, all of which liens were exempted from the provisions of the warranty. There is nothing in said deed indicating that Howard and Morgan Bennette assumed or obligated themselves to pay off the indebtedness secured by the deed of trust lien, the testimony of Morgan Bennette to the effect that they assumed said indebtedness is all the evidence of such assumption. There is nothing in the record to show that at the time N. H. Martin entered into the contract with Crighton, giving him an option to purchase said property that he, Martin, knew that the said Crighton was acting for any one other than himself, or that he knew of any contracts having been entered into between Crighton and Howard and Morgan Bennette. Therefore, we are unable to see how this state of facts could be construed as an extension of the debt secured by the deed of trust. What we have just said also applies to the second contention made under this point. As to the third proposition urged under this point, we are also unable to agree with appellants. There was no privity between Crighton and the appellants,

nor was there any privity between the appellants and N. H. Martin. As we view the record in this case, there is no evidence to support the contention that collusion is shown as between the parties involved in the trustee's sale. Certainly there was no evidence of any collusion as between Martin and Creath, or Martin and Crighton, or between Creath and either of the parties. To our mind, it only shows an effort on the part of H. M. Crighton to salvage, if possible, some of the lands covered by the deed of trust for Howard and Morgan Bennette and himself, and there is nothing to suggest any wrong doings in the efforts he put forth. Therefore these points are overruled.

■ By points Nos. 11 and 13 appellants contend that the trustee's sale of April 5, 1932, was not an absolute foreclosure but only a conditional sale by reason of the Martin-Crighton contract of March 12, 1932, all the conditions of which were complied with when the conveyance from Martin to Crighton was made and that Martin did not acquire an absolute title to the property under his purchase from the substitute trustee. We are unable to agree with the appellants in their contention that the contract between Martin and Crighton, in which Crighton obtained an option to purchase the land involved from Martin, if he, Martin, became the purchaser of same at the trustee's sale had the effect of making the deed from Creath to Martin a conditional sale, or that it had the effect of qualifying the sale in any manner. Creath, as substitute trustee under the deed of trust, had full authority to convey all the title owned by J. O. H. Bennette at the time he executed the original deed of trust in 1927, and in his deed to Martin he undertook and did convey all that interest without any kind or character of reservation, either expressed or implied, and N. H. Martin acquired the absolute title to the land free from all subsequent claims of subsequent vendees of J. O. H. Bennette, and it follows that when he executed his deed to H. M. Crighton he conveyed all the title he had acquired from the trustee.

■ By their fourteenth point, appellants contend that when H. M. Crighton purchased the land from N. H. Martin, acting under the contract with Howard and Morgan Bennette, that such title became subject to the mineral interest of appellants because the said Bennettes were legally liable for the indebtedness secured by the

deed of trust. Appellants contend that the principle of law commonly known as after-acquired title estops appellees from claiming title against the mineral interest of appellants. We have already indicated that we do not agree with appellants' contention that Howard and Morgan Bennette assumed the indebtedness owed to Martin when they accepted the deed from their father, J. O. H. Bennette. It is true that Howard Bennette was a principal in the note given Martin which was secured by the deed of trust, but that, to our minds, in no way bound him by the warranty of J. O. H. Bennette contained in his mineral deeds to the Osage company. If J. O. H. Bennette had in any manner acquired title to the undivided mineral interest claimed by appellants, his warranty contained in the several deeds executed by him would estop him from asserting such title against the appellants, but we can conceive of no good reason for extending that rule to the vendees of J. O. H. Bennette, who were in no way a party to such warranties.

It necessarily follows that we are of the opinion that no error is shown by the record, and therefore the judgment of the trial court is affirmed.