Jon MERCER, Appellant,

v.

Robert BLUDWORTH, Appellee.

No. 01–85–0924–CV.

Court of Appeals of Texas,
Houston (1st Dist.).

June 19, 1986.

Rehearing Denied Aug. 14, 1986.

Theodore C. Flick, Houston, for appellant.

John David Rainey, Rainey & LeBoeuf, Angleton, for appellee.

Before EVANS, C.J., and WARREN and SAM BASS, JJ.

## OPINION

SAM BASS, Justice.

This is an appeal from a final judgment, tried to the court, in favor of appellee in a trespass to try title suit.

We affirm.

The case involves the legal ownership of a tract of approximately 717 acres of land ("Property") in Brazoria County, Texas. The common source of title is Coastal Plains Development Corporation ("Coastal Plains"), a Texas corporation. Coastal Plains acquired the property in 1969 and 1970. During the 1960's and 1970's, Coastal Plains was owned and controlled by Charles L. Ducroz. In 1969 Coastal Plains borrowed $75,000 from Pinemont Bank. In 1970 the loan was increased to $130,000, a portion being a renewal of the prior loan, secured by a deed of trust lien covering the property. By 1972 the amount owed on the loan was approximately $141,800.

In 1972, Ducroz arranged a $300,000 loan from First Savings & Loan Association of Alvin, Texas, the predecessor of Delta Savings Association ("Delta"). Ducroz owned another Texas corporation called Intercoastal Development, Inc. ("Intercoastal") which owned approximately 300 acres of land in Brazoria County. Delta required that Ducroz and both corporations sign the note and execute a deed of trust mortgaging all land that each owned. The August 1972 deed of trust recited that it was a renewal and extension of the Pinemont Bank loan.

On February 25, 1975, an Abstract of Judgment dated February 14, 1975, in favor of Tech-Con Corporation and against Coastal Plains was recorded in the Abstract of Judgment Records of Brazoria County, Texas ("money judgment").

By 1976 the loan owed was approximately $234,800. In July 1976 the interest rate was increased and the terms of payment were modified. A new note ("note") was signed and a new deed of trust was executed which renewed and extended the Deed of Trust liens to the Property.

In July 1979, the Brazoria County Sheriff, acting through his deputy, Robert Coupland, levied on the Property under a writ of execution issued on the money judgment.

The sheriff conveyed the property to appellant by deed dated August 10, 1979. Appellant paid $8,500.00 for the Property by crediting said sum on the money judgment.

Subsequently, the obligors defaulted on the note secured by the 1976 deed of trust to Delta. About October 11, 1979, Delta's trustee posted a notice of trustee's sale at the courthouse door of Brazoria County (being more than 21 days prior to the foreclosure sale on November 6, 1979). Ducroz, Intercoastal and Coastal Plains received written notice of default, notice of the acceleration of the maturity, and notice of the foreclosure sale.

On November 6, 1979, Crouch conducted a trustee's sale and sold the Property by trustee's deed to Delta for credit on its debt.

On September 15, 1981, Delta conveyed the Property by recorded deed to appellee for the sum of $300,000.00.

This suit was commenced by appellant to clear title.

The trial court entered its findings of fact and conclusions of law.

Appellant's first and eighth points of error generally claim the trial court erred in rendering a take nothing judgment against appellant and in failing to render judgment for appellant, because appellant's title to

the property is allegedly superior, as a matter of law, to appellee's title.

The first set of points of error (2–7), alleges that appellant has superior title because the trustee's foreclosure sale was legally void. Appellant alleges that failure to give notice in strict compliance with Tex. Rev.Civ.Stat.Ann. art. 3810 (Vernon 1974), now Tex.Prop.Code Ann. § 51.002 (Vernon 1984), and failure to correctly identify the lien foreclosed upon in the Notice of Trustee's Sale, are grounds in this case to render the trustee's sale null and void. Appellant also alleges that findings of fact (nos. 22, 28–29, 30, 35, 36) are supported by no evidence and/or insufficient evidence, and/or each is against the great weight and preponderance of the evidence.

The pertinent findings are set forth below:

II. On July 30, 1976, Coastal Plains, Intercoastal, and Ducroz executed and delivered to First Savings Association of Alvin, Texas, a promissory note in the amount $234,816.25. Said note was given in renewal, extension and refinancing of the balance owed on the $300,000.00 note referred to in paragraph 5 above.

22. Acting at the request of Delta Savings Association ("Delta Savings") the owner and holder of the promissory note referred to paragraph II above, the attorney for said note-holder notified the obligors of said note in writing of the default.

28. On or about October 11, 1979, Ducroz, Intercoastal and Coastal Plains received actual notice that Delta Savings had posted the Property for foreclosure, and, that the Property was scheduled to be sold at a trustee's sale on November 6, 1979, in order to satisfy the indebtedness referred to in paragraph II above.

29. More than 21 days prior to November 6, 1979, Ducroz, Intercoastal and Coastal Plains received actual notice from Delta Savings that Delta Savings was foreclosing on its lien described in the deed of trust dated July 30, 1976, and recorded in Volume 513 Page 694 of the Deed of Trust Records of Brazoria County, Texas.

30. The letter notifying the makers of the default, as well as the Notice of Trustee's Sale enclosed with said letter, was served by certified mail and said letter and Notice of Trustee's Sale were served on the obligors of the subject indebtedness more than 21 days before the foreclosure sale described in said notice was held.

35. Prior to the trustee's sale held on November 6, 1979, Coastal Plains was given a reasonable opportunity to cure any default on the note described in paragraph II above.

36. Prior to the trustee's sale held on November 6, 1979, Coastal Plains was given notice of the acceleration of the maturity of the debt described in paragraph II above.

Appellant's second set of points of error (9–11) alleges that because Delta's deed to appellee contained a provision stating it was "subject to" appellant's sheriff's deed, that both appellee and Delta are legally bound and cannot repudiate appellant's title.

Appellant disputes findings of facts nos. 38–40, arguing that they are irrelevant, not supported by admissible evidence, and constitute legal conclusions. These findings are as follows:

38. By accepting the deed from Delta Savings Robert Bludworth did not accept, confirm, or ratify the title conveyed to Plaintiff by the sheriff's deed referred to therein.

39. In accepting the deed from Delta Savings, Bludworth relied upon a title opinion from A.G. Crouch, III that his title was superior to Jon Mercer's and that by accepting the deed he did not ratify Plaintiff's title.

40. At the time he purchased the Property from Delta Savings, Bludworth was of the opinion that Plaintiff's claim against the Property, resulting from the sheriff's deed, was spurious, invalid, and of no merit.

Finally, in his twelfth point of error, appellant alleges that the trial court erred in making finding no. 43, because appellee was on actual notice of appellant's Sheriff's deed and, as a matter of law, appellee was not a good faith improver or a bona fide purchaser. The pertinent findings are as follows:

43. The improvements to the Property made by Bludworth were made in good faith and with the belief that no other party, including Plaintiff, held a valid claim to the Property.

41. During 1961 Bludworth made valuable improvements to the Property costing over $92,168.11.

42. The improvements to the Property made by Bludworth have enhanced the value of the Property by more than $92,-168.11.

■ Appellant's argument raises both no evidence and factual insufficiency points of error. In deciding a "factual insufficiency point" this court is required to review all the evidence, including any evidence contrary to the finding of the court, and decide whether the judgment is so against the great weight and preponderance of the evidence as to be manifestly unjust. *Pfeffer v. S. Tex. Laborers' Pen. Trust Fund,* 679 S.W.2d 691, 694 (Tex.App.—Houston [1st Dist.] 1984, writ ref'd n.r.e.); *In Re King's Estate,* 150 Tex. 662, 244 S.W.2d 660 (1951). In deciding a "no evidence" point, this court will consider only that evidence and reasonable inferences therefrom which viewed in its most favorable light supports the jury finding and this court must reject all evidence or reasonable inferences to the contrary. *Glover v. Texas General Indemnity Co.,* 619 S.W.2d 400, 401 (Tex.1981); *Garza v. Alviar,* 395 S.W.2d 821, 823 (Tex. 1965).

■ When both "no evidence" and "insufficient evidence" points of error are raised, the court should rule upon the "no evidence" point first. *Glover,* 619 S.W.2d at 401. If there is probative evidence, more than a scintilla, in support of the finding, the point will be overruled and the judgment will be affirmed, unless a factual insufficiency point has also been raised and the court sustains it on the basis of a full review of the evidence. Calvert, *"No evidence" and "Insufficient evidence" Points of Error,* 38 Texas L.Rev. 361, 364 (1960); Garwood, *Insufficient Evidence on Appeal,* 30 Texas L.Rev. 803 (1952).

■ When there is evidence of probative force to support the findings and judgment of the trial court they are controlling on the reviewing court and will not be disturbed. A trial court's findings of fact are reviewable for legal and factual sufficiency of evidence to support them and conclusions of law are reviewable when attacked as a matter of law, but not on grounds of sufficiency of evidence to support them, as if they were findings of fact. *First Nat'l Bank in Dallas v. Kinabrew,* 589 S.W.2d 137, 146 (Tex.Civ.App.—Tyler 1979, writ ref'd n.r.e.). When specific findings of fact and conclusions of law are filed and a statement of facts is before the appellate court, the findings will be sustained if there is any evidence to support them and the appellate court will review the legal conclusions drawn from the facts found to determine their correctness. 4 R. McDonald, Texas Civil Practice § 16.10(b) (1984).

Tex.Civil Practice & Remedies Code §§ 16.035–16.037 (Vernon 1985) provides for recovery of lien debts on real property.

Tex.Prop.Code Ann. § 51.002 (Vernon 1984) governs the sale of real property under a contract lien.

It is fundamental that a judgment lien on the land of a debtor is subject to every equity that existed against the land at the time of judgment. *Blankenship v. Douglas,* 26 Tex. 225, 228–229 (1862).

■ It is undisputed that appellant acquired his judgment lien when Delta's deed of trust lien of record was not barred by limitations. Therefore, appellant is not a bona fide third person entitled to the presumption that the debt was paid and that the lien became void and ceased to exist. *Mercer v. Daoran Corp.,* 676 S.W.2d 580,

582 (Tex.1984); Tex.Civil Practice & Remedies Code § 16.035(c) (Vernon 1985).

Appellant acquired his interest with knowledge that his rights were subject to the rights of a senior lienholder, and therefore took title subject to the rights and the lien of Delta. *Mercer v. Daoran Corp.,* 676 S.W.2d at 582; *Jones v. Ford,* 583 S.W.2d 821, 823 (Tex.Civ.App.—El Paso 1979, writ ref'd n.r.e.).

In *Jones v. Ford,* a deed of trust given to secure a note had the same effect as a foreclosure and perfected the lien rights in favor of the holder of the note, so that another party, claiming under a subsequent sheriff's deed following an execution sale, took title subject to the rights and lien of the note holder when the deed of trust was of record and limitations had not run on the note. *Jones v. Ford,* 583 S.W.2d at 823. In the instant case, Delta perfected its lien rights by foreclosing on the deed of trust lien and then conveyed the property to appellee, who then acquired Delta's first lien status.

Appellee introduced deeds and deeds of trust into evidence which proved his chain of title out of Coastal, the common source of title.

We hold that, as a matter of law, appellee's title is superior to that of appellant.

Appellant's first and eighth points of error are overruled.

We next address appellant's first set of points of error relating to the trustee's sale.

■ As a general rule, only the mortgagor or parties in privity with the mortgagor may contest the validity of a sale under the mortgagor's deed of trust. *Estelle v. Hart,* 55 S.W.2d 510, 513 (Tex.Comm'n App.1932, opinion adopted); *Walker v. Taylor,* 142 S.W. 31, 33 (Tex.Civ.App.—San Antonio 1912, writ ref'd). A subsequent purchaser or junior lienholder may collaterally attack the sale if it is entirely void. *Estelle v. Hart,* 55 S.W.2d at 510–513. But a party having no privity with the mortgagor may not complain of mere irregularities that would merely render the sale void-

able. *Texas Osage Co-Operative Royalty Pool v. Crighton,* 188 S.W.2d 230, 233 (Tex. Civ.App.1945, writ ref. w.o.m.).

■ Appellant relies upon the holding in *American Savings and Loan Ass'n of Houston v. Musick,* 531 S.W.2d 581 (Tex. 1975) to support his position that he had standing to complain of the trustee's sale. We find that reliance misplaced. In that case, the court concluded, as a matter of law, that the party challenging the sale retained an interest in the land, by virtue of its conveyance to the mortgagor. Therefore, the party had such privity with the mortgagor as to entitle it to contest the trustee's sale.

Here, appellant had no standing to complain of the sufficiency of the notice of sale. *Texas Osage Co-Operative Royalty Pool v. Crighton,* 188 S.W.2d at 233.

■ Assuming, arguendo, that appellant had standing to complain of the sale, appellant failed to establish proof of the invalidity of the sale at trial.

The promissory note provided:

Each maker, surety and endorser hereon waives grace, notice, protest, presentment for payment, and diligence in the collection of this note, and in filing suit hereon, and agrees that their liability for the payment hereof shall not be affected or impaired by any release or change in the security or by any extension or extensions of the time of payment. This note shall be construed as a joint and several obligation when signed by more one party.

In the event default is made in the payment of any part of the principal or interest of this note as the same becomes due and payable, or in case of default in the performance of any covenant or agreement in the deed of trust given to secure the payment hereof, then, or in either event, the legal holder hereof has the option without demand or notice, to declare the entire unpaid principal of this note and accrued interest at once due and payable and to foreclose the lien securing the payment of same.

The deed of trust contained the following provision:

It is agreed that if any installment of interest or any part thereof is not paid when due, or if any part of the principal of the indebtedness is not paid when due, or in case the property converted by this deed of trust or any part thereof is placed in the hands of a receiver or taken in custody of court, or if bankruptcy proceedings are instituted by or against First Party or any other owner of the property covered by this deed of trust, or if First Party, heirs, successors, assigns, or legal representatives, fail to do or perform strictly any act, obligation, or stipulation herein agreed to be done or performed by First Party at the time or in the manner stipulated, or if any covenant or warranty contained herein be broken or not strictly kept and performed, then, in either of said events, the "holder" may, at his option, with or without notice to First Party, and without presenting for payment any matured part of the indebtedness, declare the whole of the indebtedness secured by this deed of trust due and payable; and cause trustee sale to be made at option of "holder."

The language recited in the note and deed of trust is a definite waiver of notice. The courts have consistently held that where the deed of trust or note provides otherwise, notice is not necessary and that all prerequisites of a sale are presumed to be valid. *See generally Sylvester v. Watkins,* 538 S.W.2d 827, 832–833 (Tex.Civ. App.—Amarillo 1976, writ ref'd n.r.e.); *Whalen v. Etheridge,* 428 S.W.2d 824, 827–828 (Tex.Civ.App.—Fort Worth 1968, writ ref'd n.r.e.); *Interstate Life Ins. Co. v. Turner,* 371 S.W.2d 913, 916 (Tex.Civ.App. —Waco 1963, writ ref'd n.r.e.). Such recitals will give rise only to a presumption of validity, which, as between original parties, can be rebutted. *Burnett v. Manufacturer's Hanover Trust,* 593 S.W.2d 755, 758 (Tex.Civ.App.—Dallas 1979, writ ref'd n.r. e.); *Slaughter v. Qualls,* 139 Tex. 340, 162 S.W.2d 671, 676 (1942). Therefore, the bur-den of proof rested on appellant to show the sale was invalid.

■ Appellant first complains that notice of acceleration of the note was not properly received by the debtors. For purposes of this case, we are primarily interested in 3 letters from Delta to Ducroz dated August 29, 1979, September 13, 1979, and October 11, 1979. The August 29, 1979, letter, although addressed only to "Charles L. Ducroz," clearly indicates that Delta was dealing with Ducroz not only individually, but also in his capacity as president of Coastal Plains and Intercoastal. The testimony shows that Ducroz was the only representative of Coastal Plains and Intercoastal that ever dealt with Delta in connection with the subject indebtedness. Coastal Plains had no employees or shareholders other than Ducroz and his mother. Delta obviously and properly assumed that any notices sent to Ducroz would also give notice to the corporations.

Ducroz testified that he received the foregoing letters. There was no confusion whatsoever on the part of the debtors as to what Delta intended to do if the debt was not paid. There is no evidence that either Ducroz, Coastal Plains or Intercoastal ever complained about the deficiency of any notice received from Delta in connection with this matter.

■ Nevertheless, contractual waivers of notice provisions are valid and enforceable. *See Ogden v. Gibraltar Savings Ass'n.,* 640 S.W.2d 232, 233–234 (Tex.1982). We conclude that in light of the waivers contained in the note and the deed of trust, neither notice of intent to accelerate nor notice of acceleration was required in this instance. *Cruce v. Eureka Life Ins. Co. of America,* 696 S.W.2d 656, 657 (Tex.App.— Dallas 1985, writ ref'd n.r.e.).

■ Appellant also claims the foreclosure sale held for the benefit of Delta was void because it failed to serve written notice of the proposed sale by certified mail on each debtor obligated to pay such debt.

Section 51.002 of the Property Code requires, as did Article 3810, that notice be

sent to the most recent address as shown by the records of the holder of the debt. *Krueger v. Swann,* 604 S.W.2d 454, 457 (Tex.Civ.App.—Tyler 1980, writ ref'd n.r.e.) reiterates that requirement:

> To establish a violation of the statute, it must be shown that the holder of the debt had in its records the most recent address of the debtor and failed to mail a notice by certified mail to that address.

Crouch's testimony reveals there was sufficient evidence to support the court's findings that the notice sent by Delta to the debtors complied with Article 3810.

Appellant refers to a letter from Crouch's files dated October 11, 1979, from Crouch to Ducroz. The letter stated that in accordance with a previous letter on September 13, 1979, which indicated foreclosure proceedings would be instituted, and set out the scheduled dates for posting of the notices of trustee's sale and the sale itself, that the notice of the trustee's sale had been posted that day. Although the earlier letter indicated it had been mailed by certified mail, the latter did not. However, Crouch testified that he normally sent notices by certified mail and it was possible the original was so sent.

As previously stated, the notice was mailed to the designated representative of Coastal Plains and Intercoastal at the address designated by said obligors. The address provided by Coastal Plains to Delta was all Delta needed, and notice sent to such address was sufficient. There was ample evidence in the record to establish that Ducroz (individually), Coastal Plains and Intercoastal had constructive notice of the sale through its officer and representative, Ducroz.

Two cases cited by appellant concerning strict compliance with Article 3810, *Lido International, Inc. v. Lambeth,* 611 S.W.2d 622 (Tex.1981) and *Mitchell v. Texas Commerce Bank,* are distinguishable from the facts in this case. Both cases addressed the failure of the bank to mail notice to the debtor of the foreclosure sale at the most recent address in its files. Both Ducroz and Crouch testified that the notice of trustee's sale was mailed to the proper address.

Appellant further argues that the trustee's sale was defective because Delta did not give Coastal Plains notice of the same in accordance with Tex.Bus.Corp.Act Ann. art. 2.11A (Vernon 1955). The August 29, 1979, letter from Delta to Ducroz indicated Delta thought it was dealing with the president of Coastal Plains and Intercoastal. The letter began: "This letter is written to you as President of Coastal Plains Development Corporation and Intercoastal Development, Inc." Ducroz was the only representative of the two corporations that Delta had ever dealt with and he had signed all documentation on all prior loans in that capacity. There is no evidence that Delta was ever apprised otherwise.

■ Appellant also complains that the notice of trustee's sale was fatally defective by identifying a different deed of trust from the land records, citing as authority for his position *Kimberly Development Corp. v. First State Bank of Greens Bayou,* 404 S.W.2d 631 (Tex.Civ.App.—Houston [1st Dist.] 1966, writ ref'd n.r.e.). That case is not applicable to our facts because it deals with a defect in the deed of trust itself which named a non-existent trustee. The *Kimberly* case also involved an attack on the trustee's sale by the mortgagors. Although the notice of trustee's sale prepared by Delta's attorney identified a different date of the deed of trust and an incorrect recording reference, the trustee was correctly named and a correct metes and bounds description of the property was included therein. In *Mortimer v. Williams,* 262 S.W. 123, 125 (Tex.Civ.App.—Dallas 1924, no writ) the court held that a notice of trustee's sale does not have to list the recording data of the deed of trust if the notice sufficiently describes the lien. Anyone interested in bidding at the sale could readily have contacted the trustee to clear up any confusion that may have been created by the notice.

We hold that appellant has failed to show the invalidity of the trustee's sale.

Appellant's second through seventh points of error are overruled.

■■■ Appellant's second set of points (9–11) allege that appellee, by accepting a deed "subject to" appellant's title, thereby confirmed and ratified the superiority of appellant's title.

The "subject to" language in appellee's deed referred to appellant's Sheriff's deed after the granting clause and description of the Property.

Appellant takes the position that appellee's deed involves more land than appellant's. This position is contrary to the stipulation made by the parties at the commencement of this suit. All trial testimony concerning appellant's and appellee's property described the two tracts in both parties' deeds as being the same land. Therefore, based upon the stipulation, this court will only consider that the land described in both deeds is the same.

*Lowe v. Ragland*, 156 Tex. 504, 297 S.W.2d 668, 672 (1957) supports appellee's position that he would have owned nothing if he ratified appellant's deed by accepting his deed from Delta:

> Conceivably acceptance of a deed "subject to" an earlier deed of the same grantor to the *identical* property covered by the granting clause in the later deed could *not* be taken as an obligation to respect the earlier deed, since otherwise the later one would be only an idle gesture ...

It has been established that the judgment lien through which appellant derives title is inferior to the deed of trust lien through which appellee derives his title. Appellant must use his theory of ratification and estoppel to establish a title superior to appellee's.

■■■ A reservation or exception in favor of a stranger to a deed conveys no title to such stranger. *Jackson v. McKenney*, 602 S.W.2d 124, 126 (Tex.Civ.App.—Eastland 1980, writ ref'd n.r.e.); *Joiner v. Sullivan*, 260 S.W.2d 439, 440 (Tex.Civ.App.—Texarkana 1953, writ ref'd). By the same token, strangers to the deed have no right to establish title by recitals in such deed. *Canter v. Lindsey*, 575 S.W.2d 331, 335 (Tex.Civ.App.—El Paso 1978, writ ref'd n.r.e.); *Woldert v. Skelly Oil Co.*, 202 S.W.2d 706, 709 (Tex.Civ.App.—Texarkana 1947, writ ref'd n.r.e.). *See also Little v. Linder*, 651 S.W.2d 895, 900–901 (Tex.App.—Tyler 1983, writ ref'd n.r.e.).

Appellant, in support of his position on this point, cites *National Bank of Commerce of Houston v. Dunn*, 381 S.W.2d 654 (Tex.Civ.App.—Houston 1964, writ ref'd n.r.e.). The *National Bank of Commerce of Houston* case concerned a person in privity—not an absolute stranger to the chain. In the instant case, appellant appeared in the chain of title by way of the Sheriff's deed. Delta did not convey any title to appellant.

■■■ A deed will be construed to confer upon the grantee the greatest estate that the terms of the instrument will permit. *Large v. T. Mayfield, Inc.*, 646 S.W.2d 292, 294 (Tex.App.—Eastland 1983, writ ref'd n.r.e.). The primary concern of the court is to ascertain the true intention of the parties. *Diamond Shamrock Corp. v. Cone*, 673 S.W.2d 310, 313 (Tex.App.—Amarillo 1984, writ ref'd n.r.e.).

■■■ All parts of the instrument must be given effect, if possible to do so, without violating any legal principles. Even though different parts of the deed may appear to be contradictory and inconsistent with each other the court must, if possible, construe the language of the deed so as to give effect to all provisions, i.e., harmonize all provisions therein, and not strike down any part of the deed, unless there is an irreconcilable conflict wherein one part of the instrument destroys in effect another part thereof. *Selman v. Bristow*, 402 S.W.2d 520, 523 (Tex.Civ.App.—Tyler 1966, writ ref'd n.r.e.). Obviously, to give effect to both the granting clause and the reservation clause would be impossible; in such a situation, the rule is that if both the granting clause and reservation clause cannot be given effect, the granting clause prevails and the reservation clause fails.

*Id.* at 524; *Scholz v. Heath,* 642 S.W.2d 554, 558 (Tex.App.—Waco 1982, no writ).

We hold that the grant to appellee prevails without limitation or reservation.

Appellant's ninth through eleventh points of error are overruled.

We do not address appellee's remaining cross-points because their consideration is not necessary to our disposition of the case.

The judgment is affirmed.