**CITY OF DALLAS, Appellant,**

v.

**VILLAGES OF FOREST HILLS, L.P., PHASE I, Appellee.**

No. 05–95–00368–CV.

Court of Appeals of Texas, Dallas.

April 30, 1996.

Walter C. Davis, Assistant City Attorney, Dallas, for Appellant.

Talmadge Boston, Dallas, for Appellee.

Before KINKEADE, CHAPMAN, and WHITTINGTON, JJ.

## OPINION

WHITTINGTON, Justice.

The City of Dallas appeals a judgment entered in favor of Villages of Forest Hills, L.P., Phase I ("Villages") following a bench trial. In two points of error, the City contends the trial judge erred in (1) denying its motion for summary judgment, and (2) awarding judgment in favor of Villages for $360,705 plus interest and attorney's fees. In three cross-points of error, Villages contends the trial judge erred in refusing to award certain damages. For the reasons set forth below, we affirm the trial court's judgment.

## BACKGROUND

Villages owned a 500 unit apartment complex in Dallas, Texas. Villages planned to rehabilitate the complex in five phases. In the fall of 1988, Villages applied for a loan

under the City's Rental Rehabilitation Program ("RRP")[1] to rehabilitate the first phase of the complex. In December 1988, the City's Housing and Neighborhood Services Department ("HNSD") approved Villages's loan application and Rosie Norris, assistant director of the HNSD, sent Villages a letter notifying it of the loan approval. The December 12, 1988 letter stated, in pertinent part, that:

> The City of Dallas Housing and Neighborhood Services Loan Committee has approved a Rental Rehabilitation loan to Villages of Forest Hills, Ltd., Phase I in the amount of $674,500 to rehabilitate the first phase of the Villages of Forest Hills located at 1919 Stevens Forest.

After receiving the letter, Villages entered into a syndication agreement with the March Company. Under the agreement, Villages agreed to sell federal tax credits received in connection with the project in exchange for syndication fees. The price agreed upon for the entire project was $2.5 million. According to Howard Miller, Villages's general partner, the fees in connection with the first phase amounted to $500,000.

Although the City approved Villages's loan application in December 1988, the City had trouble locating a participating lender to close the loan. Before the loan closed, the Dallas Morning News ran several articles criticizing the City's administration of the RRP. Following the bad publicity, the City suspended the program, and Villages's loan was never funded. Villages eventually sought and obtained alternate financing to complete the project, but at much less desirable rates.[2] According to the record, Villages paid an extra $60,705 in interest under the substitute loan and, ultimately, had to sell the property at a $300,000 loss.

Villages filed suit against the City for damages resulting from the City's failure to fund Villages's RRP loan. In its petition, Villages asserted causes of action for breach of contract, promissory estoppel/implied contract, fraud, and negligent misrepresentation. The City and Villages filed motions for summary judgment. Villages filed a motion for *partial* summary judgment, seeking a declaration that the City's participation in the RRP was a proprietary (as opposed to a governmental) function. The City filed a motion for summary judgment on all Villages's claims, contending (1) there was no contract between the City and Villages as a matter of law, (2) Villages was not entitled to recover in the capacity in which it sued, and (3) the City was immune from Villages's tort claims. The trial court ultimately granted Villages's motion, concluding the City's participation in the RRP was a proprietary function, and denied the City's motion. The case then proceeded to trial before the court.

At the close of evidence, the trial judge entered judgment against the City for $360,705 plus interest and attorney's fees. The trial judge refused to award damages to Villages for lost syndication fees and damages relating to later stages of the project because he concluded these damages were too speculative to be recoverable. The judge also refused to award damages for certain out-of-pocket expenses because he concluded they did not result from the City's failure to fund Villages's RRP loan. The trial judge entered findings of fact and conclusions of law to this effect. In addition, the trial judge concluded (1) the December 12th letter from Rosie Norris to Villages created a binding contract between Villages and the City, (2) the City's failure to fund Villages's loan was a breach of that contract, and (3) the conduct of the City's representatives was so closely related to the expressed will of the governing body that it constituted the act of the governing body itself. Following entry of these findings and conclusions, the City perfected its appeal to this Court.

---

1. The RRP is a HUD sponsored program administered by the City to disburse matching funds to private developers for rehabilitation of low income housing.

2. The December 12th letter from the City included the following loan terms:

No payment for the first year during construction, interest only at 1% for years two through five, and 3% interest and principal amortized for years six through 35.

Villages's substitute financing was at 9% interest per annum.

## BREACH OF CONTRACT

In its first and second points of error, the City contends the trial judge erred in awarding damages to Villages for breach of contract. The City contends the December 12, 1988 letter from Norris to Villages was not a binding contract because it was not signed by the city manager or approved by the city attorney as required by the Dallas City Charter. Because the letter did not create a binding contract, the City contends the trial judge erred in awarding damages to Villages for breach of contract.[3] We disagree.

■ We review a trial court's conclusions of law for their correctness. *See Mercer v. Bludworth*, 715 S.W.2d 693, 697 (Tex.App.—Houston [1st Dist.] 1986, writ ref'd n.r.e.), *overruled on other grounds by Shumway v. Horizon Credit Corp.*, 801 S.W.2d 890, 894 (Tex.1991). We do not reverse conclusions of law unless they are erroneous as a matter of law. *See Westech Eng'g, Inc. v. Clearwater Constructors, Inc.*, 835 S.W.2d 190, 196 (Tex.App.—Austin 1992, no writ); *Mercer*, 715 S.W.2d at 697.

■ Although the City contends the December 12th letter from Norris to Villages cannot form the basis of a valid breach of contract claim, we disagree.[4] The power to make municipal contracts rests with the City Council except where the city charter or a statute delegates that power to other municipal officers or departments. *See City of Greenville v. Emerson*, 740 S.W.2d 10, 13 (Tex.App.—Dallas 1987, no writ). Although an officer or employee of a city cannot, as a general rule, bind or estop the city in a matter placed exclusively within the authority of the city's governing body, the actions of a city official may bind or estop the city if the evidence clearly shows the official's conduct was so closely related to the expressed will of the governing body as to constitute the act of the governing body itself. *See Cleontes v. City of Laredo*, 777 S.W.2d 187, 189 (Tex.App.—San Antonio 1989, writ denied) (citing *Hallman v. City of Pampa*, 147 S.W.2d 543, 546–47 (Tex.Civ.App.—Amarillo 1941, writ ref'd)); *see also Bowman v. Lumberton Indep. Sch. Dist.*, 801 S.W.2d 883, 888 (Tex. 1990) (citing favorably to *Hallman* and "expressed will of governing body" language).

In its brief and at trial, Villages argued that despite the absence of city manager or city attorney approval, the December 12th letter created a binding contract because the procedure used to approve Villages's RRP loan was so closely related to the expressed will of the governing body (here, the City Council) as to be the act of the City Council itself. At trial, Villages presented evidence that the City Council had approved the procedures used by the HNSD to fund RRP loans like the one here at issue. Chris Pauling testified that he was loan services supervisor for the HNSD at the time of Villages's loan application. According to Pauling, the procedures governing the application and approval of RRP loans were contained in a document entitled "Rental Rehabilitation Loan Program Statement." Pauling testified this document was specifically approved by the Dallas City Council.[5] The Program Statement indicated that once a loan application was received, City staff prepared "loan proposal packages" for submission to the Housing and Neighborhood Services Loan Committee ("the loan committee"). Once

---

3. We note this is the only argument the City makes regarding the propriety of the trial judge's breach of contract finding. Because the City does not contest any other aspect of Villages's breach of contract claim (*i.e.*, adequacy of consideration, failure to perform, etc.), we limit our discussion to the City's argument that the December 12th letter was not a binding contract because it did not comply with the city charter provisions.

4. The Dallas City Charter requires the signature of a city manager and approval of the city attorney to make a binding contract. The charter states, in pertinent part, that:

> [n]o contract other than purchase orders for supplies and equipment shall be binding upon the city unless it has first been signed by the city manager and approved by the city attorney.

It is undisputed that the December 12th letter met neither of these requirements.

5. During trial, Villages offered into evidence copies of various City Council resolutions. These resolutions authorized the disbursement of RRP grant funds "in accordance with the Rental Rehabilitation Program Guidelines."

submitted, the loan committee had exclusive authority to review and approve RRP loans.

■ In this case, Villages's loan package was reviewed and approved by the loan committee. Rosie Norris notified Villages of that approval by letter dated December 12, 1988. Because this was the precise procedure selected by the council for approving RRP loans, we conclude the conduct of the city representatives in approving and notifying Villages of the approval so closely followed the expressed will of the governing body as to constitute the act of the governing body itself. Thus, the actions of the city representatives in approving Villages's RRP loan are binding on the City, and the City is estopped from denying the validity of the December 12th letter. We conclude the trial judge did not err in awarding damages to Villages for breach of contract.[6] We overrule the City's first and second points of error.

## DAMAGES

In its first and second cross-points of error, Villages contends the trial judge erred in concluding that damages relating to later stages of the rehabilitation project and damages for lost syndication fees were too speculative to be recoverable. In its third cross-point of error, Villages contends the trial judge erred in refusing to award Villages certain out-of-pocket expenses.

■ A trial court's findings of fact are reviewable for legal and factual sufficiency and its conclusions of law are reviewable when attacked as a matter of law. *See Mercer,* 715 S.W.2d at 697. In this case, although Villages states in its cross-points of error that it is challenging both the legal *and* factual sufficiency of the evidence, Villages's argument addresses only the legal sufficiency of the evidence. Because Villages has not provided any real argument or analysis on its

factual sufficiency point, we address only the legal sufficiency of the evidence.

■ We use a two-prong test to review the legal sufficiency of a finding on which the complaining party had the burden of proof. *See Sterner v. Marathon Oil Co.,* 767 S.W.2d 686, 690 (Tex.1989); *see also Zieben v. Platt,* 786 S.W.2d 797, 799 (Tex.App.—Houston [14th Dist.] 1990, no writ) (appellate court reviews legal sufficiency of trial court's fact findings in same manner it reviews evidence supporting jury's answer). First, we examine the record for evidence that supports the finding, ignoring all contrary evidence. *Sterner,* 767 S.W.2d at 690. Only if there is no evidence to support the finding do we then examine the entire record to determine whether the contrary proposition is established as a matter of law. *Sterner,* 767 S.W.2d at 690. When, as in this case, specific findings of fact and conclusions of law are filed and a statement of facts is included in the record, we first review the record to determine whether there is any evidence to support the trial judge's findings. If there is evidence to support the findings, we then review the legal conclusions drawn from the facts found to determine their correctness. *Mercer,* 715 S.W.2d at 697.

■ To recover damages for breach of contract, a plaintiff must show the damages sought were the natural, probable, and foreseeable consequence of the defendant's conduct or were within the parties' contemplation. *See Westech Eng'g, Inc.,* 835 S.W.2d at 205; *Geo Viking, Inc. v. Tex–Lee Operating Co.,* 817 S.W.2d 357, 360 (Tex.App.—Texarkana 1991), *writ denied per curiam,* 839 S.W.2d 797 (Tex.1992). A party may not recover damages for breach of contract if those damages are remote, contingent, speculative, or conjectural. *See Geo Viking, Inc.,* 817 S.W.2d at 360; *see also A.B.F. Freight* ·*Systems, Inc. v. Austrian Import Service,*

6. In reaching our decision, we necessarily reject the City's argument that the contract in this case was illegal and void. The cases relied on by the City to support this claim are inapplicable. *See Jack v. State,* 694 S.W.2d 391, 397 (Tex.App.— San Antonio 1985, writ ref'd n.r.e.); *Mayfield v. Troutman,* 613 S.W.2d 339, 344 (Tex.Civ.App.— Tyler 1981, writ ref'd n.r.e.); *Peniche v. Aeromexico,* 580 S.W.2d 152, 156–57 (Tex.Civ.App.—

Houston [1st Dist.] 1979, no writ); *Moser Co. v. First Church of Christ, Scientist,* 525 S.W.2d 946, 949 (Tex.Civ.App.—Waco 1975, no writ). In those cases, the courts found the contracts "illegal" and "void" because they violated *state statutes.* Here, we deal only with a contract that does not comply with certain city charter provisions. Because the cases are factually distinguishable, we do not find them controlling.

*Inc.,* 798 S.W.2d 606, 615 (Tex.App.—Dallas 1990, writ denied) (no recovery for speculative damages).

### Speculative Damages

Although Villages contends in its first cross-point of error that the trial judge erred in concluding that damages relating to later stages of the project were too speculative to be recoverable, we disagree. In its findings, the trial court found that (1) later stages of the project were not covered by the December 12th loan commitment; and (2) the commencement of later stages was dependent upon a variety of circumstances, both internal and external to the loan application process, many of which were beyond Villages's control. Under the analysis set out in *Mercer,* we must first review the record to determine whether there is any evidence to support these findings.

■ At trial, Villages introduced the December 12th letter into evidence. The letter clearly states that the City approved an RRP loan *for the first phase of construction.* It did not guarantee any funding for later stages. Howard Miller admitted that Villages's loan application covered only the first phase of the project, and that future phases would have to be approved separately and "stand on their own" merits. Chris Pauling likewise testified there were a number of factors, both internal and external, that could have prevented the funding of future phases of the project. For example, Pauling testified that future funding depended on (1) funding from HUD still being available, and (2) whether the apartment units were still in existence at the time of future applications. According to Pauling, thirty-two of the units had already been placed under demolition order by the Urban Rehabilitation Standards Board. This obviously raised questions about whether all 500 units would still be standing by the time future applications for funding were made. We conclude, based on this evidence, that there was some evidence to support the trial judge's findings that (1) the December 12th letter covered only the first phase of the project; and (2) the commencement of future stages was dependent on a variety of circumstances, many of which were beyond Villages's control.

Having found there was some evidence to support the trial judge's findings, we must now determine whether the trial judge properly concluded, based on the facts found, that the damages relating to future stages of the project were too speculative to be recoverable. *See Mercer,* 715 S.W.2d at 697. We conclude that he did. As noted above, commencement and completion of future stages of the project was dependent on a variety of circumstances, both internal and external to the application process, many of which were beyond Villages's control. Since commencement of future stages was dependent on a number of factors beyond Villages's control, any damages relating to the future stages would necessarily be uncertain. Thus, we conclude the trial judge correctly concluded that later stages of the project were to speculative to be recoverable. We overrule Villages's first cross-point of error.

We reach a similar conclusion with respect to Villages's argument on lost syndication fees. The trial judge concluded the syndication fees were too speculative to be recoverable based on the following findings: (1) there were no purchasers or potential purchasers of the limited partnership units contemplated by the syndication agreement, and (2) neither the March Company nor Villages ever took a "next step" beyond the agreement itself. After reviewing the record, we conclude the evidence is legally sufficient to support these findings.

■ The syndication agreement signed by the March Company and Villages was introduced into evidence at trial. The agreement provided that Villages would receive fees in connection with the sale of certain "limited partnership" units in the project. Although the agreement provided for a total of $2.5 million in fees, the amount of fees ultimately paid to Villages depended on the March Company's first locating a buyer or buyers for the limited partnership units. There was no testimony at trial that any buyers had been located. Additionally, the agreement tied the amount of fees paid to Villages "very precisely" to certain "assumptions" set out in the agreement. One such

assumption was that Villages would receive $3.5 million in RRP funding. Obviously, this figure included funding for future phases of construction and, since funding for those stages was itself uncertain, so too was the payment of the full $2.5 million fee under the syndication agreement. In addition to this evidence, we note that the March Company's obligations under the agreement were subject to a "due diligence examination" of the project and Villages itself. Again, this language leaves open the possibility that the March Company might, after conducting its examination, refuse to honor the agreement. In light of these facts, we conclude there is some evidence in the record to support the trial judge's findings. Thus, Villages's legal sufficiency point fails. Likewise, because the payment of fees under the agreement was itself uncertain, we conclude the trial judge properly concluded, based on the findings, that the lost syndication fees sought by Villages were too speculative to be recoverable. We overrule Villages's second cross-point of error.

### Out–Of–Pocket Expenses

In its third cross-point of error, Villages contends the evidence is legally insufficient to support the trial judge's finding that Villages sustained no out-of-pocket expenses as a result of the City's failure to fund its RRP loan. The record reflects that Villages spent $220,810.70 in out-of-pocket expenses in connection with the rehabilitation project. Although Villages contends these costs are recoverable from the City because, had the City promptly funded the RRP loan, Villages would have been able to reimburse itself for the out-of-pocket expenses out of its private loan proceeds, we disagree.[7] Even accepting Villages's argument as true, Villages ignores the fact that the sums it intended to use to "reimburse" itself were themselves *loan* proceeds. Thus, Villages would ultimately have been responsible for paying these "reimbursable" expenses back to the private lender. Since Villages would at some point be required to "repay" these sums, Villages cannot now claim these costs were "damages" re-

sulting from the City's failure to fund the RRP loan. We conclude the evidence is legally sufficient to support the trial judge's finding. We overrule Villages's third cross-point of error.

We affirm the trial court's judgment.

---

7. In addition to its RRP loan, Villages had obtained a loan from a private lender to cover the total cost of the rehabilitation project.