SUNSHINE MINING AND REFINING
COMPANY, Appellant,

v.

ERNST & YOUNG, L.L.P., Appellee.

No. 11–02–00108–CV.

Court of Appeals of Texas,
Eastland.

June 12, 2003.

Richard Bufkin, Richardson, for appellant.

Julie Woody, Marie Yeates, Richard Dearing, Vinson & Elkins, Houston, Karen Hirschman, William Dawson, Scott Breedlove, Vinson & Elkins, Dallas, for appellee.

Panel consists of: ARNOT, C.J., and WRIGHT, J., and McCALL, J.

Opinion

W.G. ARNOT, III, Chief Justice.

This appeal arises from a suit filed by a publicly-traded mining company against its former independent auditing firm. Sunshine Mining and Refining Company (Sunshine) has mined silver and other minerals for many years, primarily from the Sunshine Mine located in Idaho. Prior to 1999, Sunshine had not reported a profit in the previous 10 years as a result of depressed silver prices. Sunshine's net losses for 1994 to 1998 were $4,900,000, $15,500,000, $25,900,000, $19,300,000, and $64,800,000, respectively.[1] Sunshine remained in business during this period by raising operating funds through various equity and debt offerings.

Sunshine undertook efforts in the spring of 1999 to raise up to $68,500,000 by making an offering of preferred stock to European investors (the spring stock offering). Sunshine retained the services of various investment banking advisors to underwrite and market the spring stock offering. Sunshine planned to market the spring stock offering by making a series of presentations to potential investors throughout Europe beginning on June 1, 1999. Sunshine intended to use approximately $27,000,000 of the money raised from the spring stock offering to retire previously issued bonds which were to mature in

March of 2000. Sunshine intended to use the additional money raised from the spring stock offering as equity in a recently acquired mine located in Argentina known as the Pirquitas Mine.

Prior to 1999, Ernst & Young, L.L.P. (Ernst & Young) had served as Sunshine's independent auditing firm since 1984. Ernst & Young agreed to assist Sunshine with the spring stock offering in an engagement letter that it forwarded to Sunshine on May 17, 1999. However, Ernst & Young subsequently announced its resignation as Sunshine's auditing firm on May 27, 1999. Ernst & Young based the resignation on its desire to pursue other client opportunities which it considered more appealing. Ernst & Young did not cite any improprieties committed by Sunshine or its personnel in announcing the decision.

Sunshine asserts that Ernst & Young's abrupt resignation was wrongful under numerous theories of liability. Sunshine further alleges that the resignation resulted in a chain of events which ultimately caused Sunshine to file bankruptcy. Sunshine contends that the initial effect of Ernst & Young's resignation was the cancellation of the spring stock offering. The investment banking advisors retained by Sunshine cancelled the spring stock offering upon learning of the resignation. The advisors believed that the resignation of Sunshine's auditing firm within a few days of the stock offering would have had a detrimental effect on the stock offering's success. They also wanted to thoroughly investigate the reasons for the resignation before proceeding with the stock offering.

Sunshine subsequently attempted a stock offering in the fall of 1999 (the fall

1. Sunshine's net losses for 1998 reflected a $50,400,000 "write down" of its investment in the Sunshine Mine.

stock offering). The fall stock offering was not successful. Sunshine contends that, if the spring stock offering had occurred as originally planned, it would have been successful because of favorable market conditions which no longer existed in the fall. Sunshine further contends that a successful stock offering would have provided it with sufficient funds to extinguish the bond indebtedness which matured in the spring of 2000 and thus stave off bankruptcy while waiting out the depressed silver market.

Sunshine seeks consequential damages of approximately $250,000,000 in this action. The damages which Sunshine seeks fall into the following three categories: (1) "out-of-pocket" expenses of $3,600,000; (2) "lost profits" damages of $132,000,000; and (3) "lost goodwill" damages of at least $111,016,000. The out-of-pocket damages are expenses which Sunshine contends that it incurred with respect to the spring and fall stock offerings and the subsequent bankruptcy proceedings. The lost profits damages are based on Sunshine's estimate of the profits it would have realized from the future development of the Pirquitas Mine. Sunshine's lost goodwill damages are based on the decline in Sunshine's market capitalization occurring after Ernst & Young's resignation.[2]

Ernst & Young filed a motion for summary judgment which the trial court granted. The motion sought summary judgment on the issues of causation and damages on both no-evidence and traditional summary judgment grounds. Ernst & Young asserted that there is no evidence that its resignation caused Sunshine to suffer the damages which Sunshine seeks.

Ernst & Young further alleged that the evidence conclusively establishes that its resignation did not cause any damages to Sunshine. The motion additionally challenged the methodology used by Sunshine to calculate damages. Sunshine brings four points of error on appeal. We affirm.

■ We begin our consideration of this appeal by addressing the trial court's rulings on Ernst & Young's objections to Sunshine's summary judgment evidence. Sunshine responded to Ernst & Young's motion for summary judgment by filing several affidavits and other evidentiary items. Ernst & Young filed numerous objections to various items included in Sunshine's summary judgment evidence. As set forth below, there is a question as to whether or not the trial court made effective rulings on Ernst & Young's summary judgment objections. Sunshine's third and fourth points of error preserve for appellate review Sunshine's complaints regarding adverse rulings which the trial court possibly may have made on Ernst & Young's summary judgment objections.

The trial court did not enter specific rulings on Ernst & Young's objections to Sunshine's summary judgment proof. However, the "FINAL SUMMARY JUDGMENT" entered by the trial court states as follows:

> After considering the competent evidence before the Court,[1] the applicable law, the live pleadings, and the arguments of counsel, the Court finds that Defendant's motion should be and hereby is **granted.** (Emphasis in original)

The trial court's footnote stated:

> The Court considered Defendant's Objections to Sunshine (sic) Summary

---

2. The term "market capitalization" refers to the cumulative value of Sunshine's outstanding shares of stock. The price of Sunshine's stock dropped significantly after the date of Ernst & Young's resignation (May 27, 1999). As a result of this drop, Sunshine's market capitalization decreased from $105,466,000 as of May 27, 1999, to $15,000,000 in August of 2001. Accordingly, $90,466,000 of the lost goodwill calculation of $111,016,000 is attributable to the decline in Sunshine's market price.

Judgment Evidence, Plaintiff's Response to Defendant's Objections to Summary Judgment Evidence, and Defendant's Reply in Support of Its Objections to Summary Judgment Evidence.

Ernst & Young argues that the foregoing statement constitutes a ruling in its favor on all of its objections to Sunshine's summary judgment evidence. *Ernst & Young* cites *Frazier v. Yu*, 987 S.W.2d 607 (Tex. App.-Fort Worth 1999, pet'n den'd), in support of this proposition.

The defendant in *Frazier* moved for a no-evidence motion for summary judgment and objected to the plaintiff's summary judgment proof. In granting the defendant's motion for summary judgment, the trial court's order stated that the court had reviewed the "competent" summary judgment proof. *Frazier v. Yu*, supra at 610. The Fort Worth Court of Appeals held that the inclusion of this phrase created an inference that the trial court implicitly sustained all of the defendant's objections to the plaintiff's summary judgment evidence. The court relied upon the concept of implied rulings embodied in TEX. R.APP.P. 33.1(a)(2)(A) in reaching its holding.

Several courts have expressed their disagreement with the holding in *Frazier* for a variety of reasons. See *Allen v. Albin*, 97 S.W.3d 655, 662 (Tex.App.-Waco 2002, no pet'n); *Well Solutions, Inc. v. Stafford*, 32 S.W.3d 313, 317 (Tex.App.-San Antonio 2000, no pet'n); *Dolcefino v. Randolph*, 19 S.W.3d 906, 926 (Tex.App.-Houston [14th Dist.] 2000, pet'n den'd). As noted in *Trusty v. Strayhorn*, 87 S.W.3d 756, 760 (Tex.App.-Texarkana 2002, no pet'n h.), many of the cases which have criticized *Frazier* are factually distinguishable because their respective summary judgment orders did not include the statement that the trial court had reviewed the "competent" summary judgment evidence. Instead, these cases involve summary judgment orders which are silent with respect to the trial court's treatment of summary judgment objections. They reject *Frazier's* finding of an implicit ruling on summary judgment evidence on the rationale that a ruling on a summary judgment motion does not necessarily imply a ruling on an objection to summary judgment evidence.

The language used by the trial court in the instant appeal is virtually identical to the language at issue in *Frazier*. Nevertheless, we decline to infer an implicit ruling by the trial court sustaining any or all of Ernst & Young's objections to Sunshine's summary judgment evidence. The trial court obviously considered Ernst & Young's summary judgment objections as reflected by the court's express statement to this effect. However, we are unable to determine the trial court's rulings on the objections from its statement that it considered the "competent" evidence. The use of this term does not indicate that the trial court actually excluded any of Sunshine's summary judgment evidence from consideration. We hold that, absent a clear indication that the trial court actually excluded an item of summary judgment evidence, its inclusion in the record should be presumed. Otherwise, appellant is placed in the position of having to present appellate complaints about essentially unknown evidentiary rulings. We do not address the merits of Sunshine's third and fourth points of error because the record does not reflect that the trial court actually excluded any items of Sunshine's summary judgment evidence.

■ The trial court granted Ernst & Young's motion for summary judgment without specifying the grounds upon which it relied in granting the motion. When a trial court's order granting summary judgment does not specify the ground or

grounds relied upon for its ruling, summary judgment will be affirmed on appeal if any of the summary judgment grounds advanced by the movant are meritorious. *Dow Chemical Company v. Francis*, 46 S.W.3d 237, 242 (Tex.2001); *Carr v. Brasher*, 776 S.W.2d 567, 569 (Tex.1989).

The trial court must grant a no-evidence motion for summary judgment unless the non-movant produces evidence that raises a genuine issue of material fact on the challenged element of his claim or defense. TEX.R.CIV.P. 166a(i). The appellate court reviews evidence presented in response to a motion for a no-evidence summary judgment in the same way it reviews evidence presented in support of, or in response to, a motion for traditional summary judgment: it accepts as true evidence favorable to the non-movant and indulges every reasonable inference and resolves all doubts in favor of the non-movant. *Hight v. Dublin Veterinary Clinic*, 22 S.W.3d 614, 619 (Tex.App.-Eastland 2000, pet'n den'd); see *American Tobacco Company, Inc. v. Grinnell*, 951 S.W.2d 420, 425 (Tex.1997); *Nixon v. Mr. Property Management Company, Inc.*, 690 S.W.2d 546, 548–49 (Tex.1985). The appellate court reviews, however, only evidence presented by the non-movant. Rule 166a(i); *Hight v. Dublin Veterinary Clinic*, supra at 618–19. If the non-movant presents more than a scintilla of evidence on the disputed element, a no-evidence summary judgment is improper. *Hight v. Dublin Veterinary Clinic*, supra; *Denton v. Big Spring Hospital Corporation*, 998 S.W.2d 294, 298 (Tex.App.-Eastland 1999, no pet'n); cf. *Merrell Dow Pharmaceuticals, Inc. v. Havner*, 953 S.W.2d 706 (Tex. 1997), *cert. den'd*, 523 U.S. 1119, 118 S.Ct. 1799, 140 L.Ed.2d 939 (1998).

A trial court must grant a traditional motion for summary judgment if the moving party establishes that no genuine issue of material fact exists and that he is entitled to judgment as a matter of law. TEX. R.CIV.P. 166a(c); *Lear Siegler, Inc. v. Perez*, 819 S.W.2d 470, 471 (Tex.1991). Once the movant establishes a right to a summary judgment, the non-movant must come forward with evidence or law that precludes summary judgment. *City of Houston v. Clear Creek Basin Authority*, 589 S.W.2d 671, 678–79 (Tex.1979). When reviewing a summary judgment, the appellate court takes as true evidence favorable to the non-movant. *American Tobacco Company, Inc. v. Grinnell*, supra at 425; *Nixon v. Mr. Property Management Company, Inc.*, supra at 548–49.

■ Sunshine's first point of error is directed at the summary judgment grounds which address causation. Ernst & Young's motion for summary judgment listed the following grounds pertaining to causation: (1) "[p]ursuant to TEX. R.CIV.P. 166a(i), there is no evidence that [Ernst & Young] was the cause of any injury or damages or that there was any actual injury or damages"; and (2) "[p]ursuant to TEX.R.CIV.P. 166a(c) ... Ernst & Young did not cause Sunshine any compensable injury or damages." We agree with Ernst & Young's contention that there is no evidence that it caused the damages which Sunshine seeks.

As noted previously, Sunshine contends that Ernst & Young's resignation set in motion a series of events which led to Sunshine filing bankruptcy. The pivotal link in this chain of events is Sunshine's contention that the spring stock offering would have been successful if Ernst & Young had not abruptly resigned. All of the damages sought by Sunshine are premised on this contention. Accordingly, there must be some evidence that the spring stock offering would have been successful in order for Sunshine to establish the causal link for the damages it seeks.

Sunshine's summary judgment evidence supporting the allegation of a successful stock offering consisted of the affidavits of its officers and its investment banking advisors. These individuals declared their belief that the spring stock offering would have been successful had Ernst & Young not abruptly resigned. The summary judgment record also included the names of investors who had agreed to attend the stock presentations. Sunshine additionally points to its history of successful offerings in the past as evidence that the spring stock offering would have been successful. However, Sunshine's summary judgment evidence does not identify any investors who would have purchased stock at the spring stock offering had it occurred as planned. Furthermore, there is no evidence that investors would have purchased a sufficient amount of Sunshine's stock in order for the stock offering to be considered successful.

The Dallas Court of Appeals addressed a similar situation in *City of Dallas v. Villages of Forest Hills, L.P., Phase I*, 931 S.W.2d 601 (Tex.App.-Dallas 1996, no writ). The City of Dallas entered into an agreement to loan funds to an apartment complex owner (Villages). *City of Dallas v. Villages of Forest Hills, L.P., Phase I*, supra at 602–03. Villages intended to use the funds to rehabilitate an apartment complex. *City of Dallas v. Villages of Forest Hills, L.P., Phase I*, supra at 602–03. After receiving notification from the city that the loan had been approved, Villages entered into a syndication agreement whereby Villages would receive syndication fees from the sale of limited partnership units. *City of Dallas v. Villages of Forest Hills, L.P., Phase I*, supra at 603. Villages subsequently filed suit against the city as a result of the loan not being funded. Villages sought lost syndication fees as an element of damages. *City of Dallas v. Villages of Forest Hills, L.P., Phase I*, supra at 606–07. The trial court denied a recovery for lost syndication fees on the basis that they were too speculative to be recoverable. *City of Dallas v. Villages of Forest Hills, L.P., Phase I*, supra at 606–07. In affirming the trial court's denial of a recovery for lost syndication fees, the Dallas Court of Appeals noted that no evidence was offered regarding investors willing to purchase the partnership units.

In *Richter, S.A. v. Bank of America National Trust and Savings Association*, 939 F.2d 1176, 1188 (5th Cir.1991), the jury made a damage award to a claimant for the lost opportunity to sell an interest in a partnership. The claimant offered testimony in support of its claim that it would have been able to sell its partnership interest to a particular purchaser for a specified price. However, there was no evidence that the potential purchaser had ever made an offer to purchase the partnership interest. The appellate court held that the seller's testimony regarding its expectations of a successful sale failed to substantiate the damage award with the requisite degree of certainty.

The sales of partnership interests in *City of Dallas* and *Richter, S.A.* are similar to the facts in this appeal because they involved equity offerings in business ventures to third-party investors. The success or failure of such undertakings is entirely dependent upon the purchasing decisions of third parties. *City of Dallas* and *Richter, S.A.* require the existence of evidence identifying investors who would have been willing to purchase the ownership shares in order for the claimant to obtain damages based on lost sales opportunities. We believe this evidentiary requirement is reasonably applied in this case. Proof of causation cannot turn upon speculation or conjecture. *Leitch v. Hornsby*, 935 S.W.2d 114, 119 (Tex.1996); *Fitzgerald v. Antoine National Bank*, 980 S.W.2d 228, 231 (Tex.App.-Houston [14th

Dist.] 1998, no pet'n). Sunshine's stock offering was an inherently speculative undertaking given its historically deteriorating financial condition and the depressed silver market. Without evidence identifying investors willing to purchase a sufficient amount of Sunshine's stock for the offering to be successful, the evidence supporting Sunshine's theory of causation was too speculative to permit a finding that Ernst & Young caused the damages which Sunshine seeks. Therefore, there is no evidence that Ernst & Young caused the damages which Sunshine seeks in this action. Appellant's first point of error is overruled.

Our determination that there is no evidence supporting Sunshine's theory of causation is dispositive of this appeal. We note in this regard that we have not reached Ernst & Young's summary judgment grounds attacking the methodology used by Sunshine to calculate damages for lost goodwill and lost profits.[3] The judgment of the trial court is affirmed.

---

3. With respect to Sunshine's claims for lost goodwill damages, Ernst & Young contends that it is improper to base a claim for lost goodwill on the decrease of a company's market capitalization. Ernst & Young also attacks the evidentiary support for Sunshine's lost goodwill claim. Ernst & Young asserts that Sunshine's lost profits claim is too speculative to permit a recovery because the claim is dependent upon a rise in the price of silver which may not occur in the foreseeable future.