Opinion filed May 6, 2010

 

                                                                       In The

                                                                              

  Eleventh
Court of Appeals

                                                                   __________

 

                                                        No. 11- 09-00275-CV

                                                    __________

 

                                    ELVIN
MAXWELL, Appellant

 

                                                             V.

 

                                       ROBERT
WILLIS, Appellee



 

                                   On
Appeal from the 238th District Court

 

                                                          Midland
County, Texas

 

                                                   Trial
Court Cause No. CV46444

 



 

                                                                  O
P I N I O N

 

            Robert
Willis filed suit against Texas Tech University and Elvin Maxwell alleging
several causes of action in connection with his removal from the University’s
Physician’s Assistant (PA) Program.  Maxwell filed a motion for summary
judgment and, in part, alleged that Willis’s claims were barred by official
immunity.  The trial court denied Maxwell’s motion, and he filed this
interlocutory appeal.  We reverse.

I.  Background Facts

Willis
was enrolled in the University’s PA Program.  Maxwell is the PA program director
and regional dean for the School of Allied Health Sciences Midland Campus.  On
July 31, 2007, Willis requested permission to take his finals separately from
his classmates because of interpersonal problems between himself and another
student.  Tammy Ream, associate program director, allowed him to take his
finals in a separate location.  On August 2, Ream was contacted by Kristy
McCoy, another PA student.  McCoy relayed several rumors concerning Willis,
including an allegation that he had pointed a gun at a classmate, Rima
Paralkar.  Ream relayed this to Maxwell.  He instructed her to check with the
campus police to see if there was any record of complaints against Willis and
to schedule meetings with McCoy, Paralkar, and Willis in his office on August
7.

Ream
contacted the campus police department on August 3 and learned that in 2003
misdemeanor warrants had been issued for Willis for criminal mischief and
deadly conduct and that in 2007 he was arrested for disorderly conduct
following an altercation at a local restaurant involving Willis’s ex-wife and a
classmate/girlfriend.  The campus chief of police, Charles Gunn, advised Ream
that none of the three charges had been finally resolved and that there was
nothing for his department to get involved with at this time.

On
August 7, Maxwell met first with McCoy and then Paralkar.  After the Paralkar
meeting, Ream contacted the campus police department and asked them to provide
an officer for the Willis meeting and to escort Willis from campus following that
meeting.  When Maxwell met with Willis, he told Willis that he was being
dismissed and that he was not to return to campus until notified otherwise.  A
campus police officer asked Willis for permission to search his vehicle. 
Willis consented.  His vehicle was searched but no weapons were found.

Maxwell
filed a complaint of misconduct with the University alleging that Willis had
violated provisions of the student code.  The University’s Student Conduct
Board met, determined that Willis had violated the student code, and
recommended his dismissal from the PA program.

II.  Issues Presented

Maxwell
challenges the trial court’s summary judgment ruling with two issues.  Maxwell
contends that the trial court abused its discretion by considering inadmissible
summary judgment evidence and that the trial court erred by denying his motion
for summary judgment.

III.  Summary Judgment Evidence

Willis’s response to Maxwell’s summary judgment motion included his
own affidavit, excerpts of his deposition, and his answers to Maxwell’s
interrogatories.  Maxwell objected to portions of that evidence.  The trial
court denied Maxwell’s motion without specifically ruling on Maxwell’s
objections.  We presume, therefore, that it considered the challenged
evidence.  Sunshine Mining & Ref. Co. v. Ernst & Young, L.L.P.,
114 S.W.3d 48, 51 (Tex. App.—Eastland 2003, no pet.).

Maxwell complains that the trial court erred by not striking several
paragraphs of Willis’s affidavit because they interjected his uncorroborated
subjective belief regarding Maxwell’s motivation.  We review the trial court’s
admission or exclusion of summary judgment evidence under an abuse of
discretion standard.  Harris v. Showcase Chevrolet, 231 S.W.3d 559, 561
(Tex. App.—Dallas 2007, no pet.).  Affidavits containing unsubstantiated
factual or legal conclusions or subjective beliefs that are not supported by
evidence are not competent summary judgment proof because they are not credible
or susceptible to being readily controverted.  Ryland Group, Inc. v. Hood,
924 S.W.2d 120, 122 (Tex. 1996).  Motive may be established by direct or
circumstantial evidence.  See Willis v. Nucor Corp., 282 S.W.3d 536, 544
(Tex. App.—Waco 2008, no pet.).  That evidence may not, however, consist solely
of the plaintiff’s subjective belief.  See Tex. Div.-Tranter, Inc. v.
Carrozza, 876 S.W.2d 312, 314 (Tex. 1994) (plaintiff’s statement that he
believed in good faith that he was terminated for filing a workers’
compensation claim was not competent summary judgment evidence).

Willis testified in his affidavit that he was removed from the PA
program because Maxwell disliked anyone who challenged him academically; that
Maxwell improperly relied upon Paralkar’s statement falsely accusing him of
pointing a gun at her; that Maxwell told his fellow classmates that he had
threatened a student with a firearm, that he was a dangerous individual, that
they were not to contact him, and that they should contact the campus police if
he did; that Maxwell’s statements were false; that Maxwell acted in bad faith
by not conducting a thorough investigation but instead only considered one side
of the story; that Maxwell was not motivated by safety concerns because he
waited over five days to meet with the students and that he was, instead,
motivated by malice; and that Maxwell lied about his involvement in order to
settle a grudge.

To determine if the trial court abused its discretion by considering
Willis’s affidavit, we consider the entire record.  Maxwell’s summary judgment
evidence establishes the following:

·        
August 2, 2007. Ream received a
call from McCoy reporting rumors that Willis was selling drugs, that he had
threatened Paralkar with a gun, that he had taken her laptop and made
derogatory changes to her MySpace page, and that he was following her. 
Ream reported this to Maxwell.  He instructed her to contact the campus police
to see if they had any records of these allegations and to set up meetings with
McCoy, Paralkar, and Willis for August 7 when he was scheduled to return to the
office.

 

·        
August 3.  Ream contacted Campus
Chief Gunn and learned that misdemeanor warrants had previously been issued for
Willis but that there was no final disposition on those cases and that there
was nothing for his department to get involved with.  Ream asked a staff member
to schedule appointments with the three students and warned her that there was
a potential for conflict between Willis and Paralkar so that she could advise
the faculty.  Ream relayed Chief Gunn’s information to Maxwell.

 

·        
August 7, 8:00 am.  Maxwell met
with McCoy.  She repeated her accusations and expressed concern for her safety.

 

·        
9:00 am.  Maxwell met with
Paralkar.  He asked for her response to the accusations against Willis.  She
denied that Willis was selling drugs but confirmed that they had been involved
in a relationship, that she had broken up with him, and that she had come to
his house to retrieve her personal items.  While she was there, he threatened
her with a gun.  The police arrived and stayed while she collected her
property, but she did not tell them that Willis had threatened her with a gun
because she did not want to get him into trouble.  She drove away and then
called the police and reported the gun allegation.  She did not report this
incident to school officials because she did not want to get Willis kicked out
of the program.  Paralkar told Maxwell that Willis normally carried a gun in
his car console.  

 

·        
9:30 am.  Ream contacted Chief
Gunn and asked him to be present for their meeting with Willis and to escort
him from campus following that meeting. 

 

·        
11:00 am.  Maxwell met with
Willis.  Two campus police officers were present.  Maxwell told Willis that he
was aware of a police report involving Willis pointing a gun at Paralkar, that
Willis was being dismissed from campus, that he was not to return to campus or
PA program facilities, and that he was not to contact Paralkar or any other PA program
students or faculty.  Maxwell consented to a search of his vehicle by campus
police.  They did not find a weapon.

 

·        
1:00 pm.  Maxwell spoke with the
PA program students and advised them that “Mr. Willis had been escorted from
campus because of documentation that he pulled a gun on Ms. Paralkar.”  Maxwell
told the students that Mr. Willis was not to be on campus or to contact them. 
He asked them to notify the police and advise the faculty if Willis did attempt
to contact them.

 

·        
August 15.  Maxwell filed a
complaint of misconduct against Willis.  Of significance to this appeal is the
fact that Maxwell told the University that he first informed Willis of the
allegations against him and asked him if he had any response and that Willis
declined to make a response.  Maxwell then told Willis to leave the campus and
to avoid any other students or faculty until the situation was resolved by
higher authorities.  Maxwell also reported that the campus police asked for
permission to search Willis’s vehicle but Willis declined and that Midland
College had banned Willis from the campus until his situation was resolved.

 

·        
May 27, 2009.  Maxwell signed an
affidavit in support of his motion for summary judgment.  Of significance to
this appeal is his statement that he advised the PA program students that Willis
had been escorted off campus because of allegations that Willis pointed a gun
at a fellow student but that he did not mention Paralkar by name. Maxwell
testified that he met with the students and told them about Willis because of
his concern for the safety and welfare of the students, faculty, and staff.

 

            Maxwell’s
evidence corroborates much of Willis’s affidavit. Willis was critical of
Maxwell’s investigation because he relied upon the statement of another student
and did not conduct a thorough investigation.  Maxwell’s evidence confirms that
he decided to remove Willis from the PA program after talking to McCoy and
Paralkar but before speaking with Willis.  Willis testified that the delay
between McCoy’s initial report and the decision to remove him belays any
conclusion that Maxwell was motivated by a safety concern.  Maxwell’s evidence
confirms that five days passed between McCoy’s report and Maxwell’s student
meetings.  In the interim, Maxwell asked Ream to check for police reports, but
no student-safety steps were taken.

Willis
testified that Maxwell lied about his involvement. There are several
inconsistencies between Ream’s documentation, Maxwell’s complaint, and his
summary judgment affidavit.  According to Ream, when Maxwell met with Willis on
August 7, he relayed the accusations that had been made and, without affording
him a chance to respond, told Willis that he was being removed from the
program.  Conversely, Maxwell told the University that he first gave Willis a
chance to respond to the accusations and that Willis declined to do so.  Ream
documented that Willis was asked for permission to search his car and that,
while he was initially reluctant to do so, he did agree and that the officers
reported to Maxwell that they found no weapon.  Maxwell, however, told the
University that Willis refused to consent to the search. Maxwell told the
University that the campus police banned Willis from the campus.  Ream’s
documentation makes clear that it was Maxwell’s decision.  In fact, Maxwell’s
summary judgment evidence included a letter dated August 21, 2007, from Chief
Gunn to Willis informing him that Maxwell had lifted the trespass notice.  Maxwell
denied using Paralkar’s name during his meeting with the PA program students.  But
Ream documented that Maxwell told the students Willis had been removed “because
of documentation that he pulled a gun on Ms. Paralkar.”

The
trial court did not abuse its discretion by considering Willis’s affidavit
testimony.  It was more than just Willis’s subjective beliefs, and his
underlying factual statements were sufficiently corroborated by Maxwell’s
evidence.  

Maxwell
next argues that the trial court erred by considering hearsay statements in
Willis’s affidavit, specifically what Maxwell told the PA students since Willis
was not present.  The trial court did not err by considering this testimony
because it was confirmed by Maxwell’s own summary judgment evidence.  

Maxwell
argues that the trial court erred by considering Willis’s interrogatory responses. 
We agree.  Tex. R. Civ. P. 197.3 provides
that interrogatory answers may only be used against the responding party. 
Finally, Maxwell contends that the trial court erred by considering Willis’s
deposition testimony where he described a conversation with Paralkar.  Willis
testified that Paralkar told him Maxwell threatened to remove her from the PA program
if she did not tell him what was in the police report or if what was reported
was not what happened.  This is hearsay, and Willis offers no exception.  The
trial court, therefore, erred by considering it.  

Maxwell’s
first issue is sustained in part and overruled in part.  The trial court did
not err by considering Willis’s affidavit, but it did err by considering
Willis’s interrogatory answers and his deposition testimony concerning a
conversation with Paralkar.

IV.  Summary Judgment

Willis
pleaded three causes of action against Maxwell: breach of student
confidentiality, defamation, and denial of substantive due process.  Maxwell
originally raised official immunity as an affirmative defense to all three but,
on appeal, acknowledges that this defense does not apply to Willis’s student
confidentiality or due process claims.  Thus, our inquiry is limited to whether
official immunity bars Willis’s defamation claim.

Maxwell
contends first that Willis presented no evidence that Maxwell defamed him
because he tendered no evidence that Maxwell told the PA students Willis had
been expelled or that he otherwise made a false statement.  Ream’s
documentation, however, provides:

Mr. Maxwell spoke
with the class of 2008 to advise them that Mr. Willis had been escorted from
campus because of documentation that he pulled a gun on Ms. Paralkar.  He
advised them that Mr. Willis was not to be on campus or to contact them.  He
asked that if they were contacted, they were to contact the police and advise
the faculty. 

 

The trial court,
therefore, had evidence that Maxwell told the PA students Willis had been
expelled for pointing a gun at Paralkar.  

Maxwell
next argues that, as a matter of law, the doctrine of official immunity
precludes Willis’s defamation claim against him and, consequently, that the
trial court erred by denying his summary judgment motion.  Official immunity is
an affirmative defense that protects a government employee from liability in a
lawsuit when the employee (1) performs discretionary duties (2) within the
scope of the employee’s authority (3) provided the employee acted in good
faith.  Univ. of Houston v. Clark, 38 S.W.3d 578, 580 (Tex. 2000). 
Willis contends that Maxwell failed to carry his burden of proof to establish this
defense as a matter of law.

A
trial court must grant a motion for summary judgment if the moving party
establishes that no genuine issue of material fact exists and that it is
entitled to judgment as a matter of law. Tex.
R. Civ. P. 166a(c); Lear Siegler, Inc. v. Perez, 819 S.W.2d 470,
471 (Tex. 1991).  In order for a defendant to be entitled to summary judgment,
it must either disprove an element of each cause of action or establish an
affirmative defense as a matter of law.  Am. Tobacco Co. v. Grinnell,
951 S.W.2d 420, 425 (Tex. 1997). Once the movant establishes a right to summary
judgment, the nonmovant must come forward with evidence or law that precludes
summary judgment. City of Houston v. Clear Creek Basin Auth., 589 S.W.2d
671, 678-79 (Tex. 1979). When reviewing a traditional summary judgment, the
appellate court considers all the evidence and takes as true evidence favorable
to the nonmovant. Am. Tobacco Co., 951 S.W.2d at 425; Nixon v. Mr.
Prop. Mgmt. Co., 690 S.W.2d 546, 548-49 (Tex. 1985). The appellate court
“must consider whether reasonable and fair-minded jurors could differ in their
conclusions in light of all of the evidence presented” and may not ignore “undisputed
evidence in the record that cannot be disregarded.” Goodyear Tire &
Rubber Co. v. Mayes, 236 S.W.3d 754, 755, 757 (Tex. 2007). 

Maxwell
argues that investigating and acting on gathered facts are quasi-judicial
actions involving the exercise of discretion, that his investigation of and
response to McCoy’s report was within the scope of his authority, and that he
acted in good faith.  Willis does not dispute that Maxwell exercised a
discretionary duty but focuses on Maxwell’s meeting with the PA students and
contends that Maxwell acted outside the scope of his authority and in bad
faith.

Maxwell
presented the trial court with evidence of broad authority.  He testified by
affidavit that he is the Regional Dean for the School of Allied Health Sciences
Midland Campus and that he is responsible for the PA program.  This includes
the responsibility for security and personal safety for the students and
faculty.  Willis has not contested this authority but contends that it does not
allow him to disclose confidential student records information in violation of
the Family Educational Rights and Privacy Act (FERPA), 20 U.S.C. § 1232g, or to
defame students.

We
need not determine whether Maxwell violated FERPA because it is not dispositive
of his defamation action.  Maxwell communicated three facts to the PA students:
(1) Willis had been expelled; (2) there was documentation that Willis
threatened Paralkar with a gun; and (3) Willis should be considered
dangerous.  Maxwell’s statement that Willis had been expelled was true. 
Likewise, Maxwell’s reference to documentation that Willis pulled a gun on
Paralkar is not defamatory because the Midland Police Department had, in fact,
documented Paralkar’s accusation.

If
Maxwell defamed Willis, it was by telling the students that he was dangerous. 
Willis contends that Maxwell lacked the authority to do so because it was
defamatory.  That, however, speaks more to Maxwell’s good faith than his
authority.  If we assume no educator has the authority to defame a student,
that does not mean that they have no authority to communicate unresolved
accusations of dangerous behavior to fellow students, faculty, or staff in the
interest of their safety.  The question is did Maxwell have the authority to
warn the students in response to Paralkar’s accusation?  Maxwell testified that
he had broad student-safety responsibility and authority and that he was acting
within the scope of that authority when he met with the PA students.  Willis
did not challenge Maxwell’s description of his authority or his right to alert
the students to a safety concern posed by a fellow student.  Maxwell,
therefore, established that he was acting within the scope of his authority.

The
final inquiry is whether Maxwell acted in good faith.  To determine if a public
official acted in good faith, we use an objective standard, asking whether a
reasonably prudent official, under the same or similar circumstances, could
have believed that his conduct was justified based on the information he
possessed when the conduct occurred.  Joe v. Two Thirty Nine Joint Venture,
145 S.W.3d 150, 164 (Tex. 2004).  The standard of good faith with respect to
official immunity is not a test of carelessness, negligence, or motivation and
does not inquire into what a reasonable person “would have done” but
what a reasonable person “could have believed.”  Ballantyne v.
Champion Builders, Inc., 144 S.W.3d 417, 426 (Tex. 2004).

Maxwell
was presented with conflicting evidence on what happened between Willis and
Paralkar.  Willis denied pulling a gun, and Paralkar provided inconsistent
statements to the police and withheld information from the University.  But she
told the police Willis had threatened her with a gun and repeated that
accusation to Maxwell.  A reasonable person could have believed her.  In
addition to the credibility resolution that normally defies unilateral
assessment, Maxwell knew that warrants had previously been issued against
Willis for criminal mischief and deadly conduct and that, earlier in the year,
he had been arrested for disorderly conduct.  A reasonable person could have
also considered that Willis was accused of life-threatening conduct directed at
a fellow student and determined that the other students’ safety considerations
outweighed Willis’s privacy concerns.

Maxwell
may have subjectively been motivated by improper concerns, but he established
that a reasonable public official could have made the same decision as did he. 
We note that Willis tendered evidence questioning Maxwell’s motivation and
whether he made the right decision, but no evidence in support of the
proposition that no reasonable person could have believed Paralkar or
determined that Willis posed a safety risk.  See Crouch v. Trinque, 262
S.W.3d 417, 422 (Tex. App.—Eastland 2008, no pet.) (if defendant meets its
burden to establish official immunity, plaintiff must come forward with
controverting evidence).

Because
Maxwell established his official immunity affirmative defense to Willis’s
defamation cause of action, the trial court erred when it denied his motion for
summary judgment.  Maxwell’s second issue is sustained.

V.  Conclusion

The
judgment of the trial court is reversed.  Judgment is
rendered that Willis take nothing on his defamation claim.  This case is
remanded to the trial court for consideration of Willis’s remaining causes of
action.  We express no opinion on those claims.

 

                                                                                    

RICK
STRANGE

                                                                                    JUSTICE

 

May 6, 2010

Panel consists of:  McCall, J., 

Strange, J. , and Boyd, S.J.[1]

 









                [1]John T. Boyd, Retired Chief Justice, Court of Appeals,
7th District of Texas at Amarillo, sitting by assignment.