**Opinion filed May 6, 2010**



## In The

# Eleventh Court of Appeals

—————

### No. 11- 09-00275-CV

—————

### ELVIN MAXWELL, Appellant

### V.

### ROBERT WILLIS, Appellee

**On Appeal from the 238th District Court**

**Midland County, Texas**

**Trial Court Cause No. CV46444**

### O P I N I O N

Robert Willis filed suit against Texas Tech University and Elvin Maxwell alleging several causes of action in connection with his removal from the University's Physician's Assistant (PA) Program. Maxwell filed a motion for summary judgment and, in part, alleged that Willis's claims were barred by official immunity. The trial court denied Maxwell's motion, and he filed this interlocutory appeal. We reverse.

### I. *Background Facts*

Willis was enrolled in the University's PA Program. Maxwell is the PA program director and regional dean for the School of Allied Health Sciences Midland Campus. On July 31, 2007,

Willis requested permission to take his finals separately from his classmates because of interpersonal problems between himself and another student. Tammy Ream, associate program director, allowed him to take his finals in a separate location. On August 2, Ream was contacted by Kristy McCoy, another PA student. McCoy relayed several rumors concerning Willis, including an allegation that he had pointed a gun at a classmate, Rima Paralkar. Ream relayed this to Maxwell. He instructed her to check with the campus police to see if there was any record of complaints against Willis and to schedule meetings with McCoy, Paralkar, and Willis in his office on August 7.

Ream contacted the campus police department on August 3 and learned that in 2003 misdemeanor warrants had been issued for Willis for criminal mischief and deadly conduct and that in 2007 he was arrested for disorderly conduct following an altercation at a local restaurant involving Willis's ex-wife and a classmate/girlfriend. The campus chief of police, Charles Gunn, advised Ream that none of the three charges had been finally resolved and that there was nothing for his department to get involved with at this time.

On August 7, Maxwell met first with McCoy and then Paralkar. After the Paralkar meeting, Ream contacted the campus police department and asked them to provide an officer for the Willis meeting and to escort Willis from campus following that meeting. When Maxwell met with Willis, he told Willis that he was being dismissed and that he was not to return to campus until notified otherwise. A campus police officer asked Willis for permission to search his vehicle. Willis consented. His vehicle was searched but no weapons were found.

Maxwell filed a complaint of misconduct with the University alleging that Willis had violated provisions of the student code. The University's Student Conduct Board met, determined that Willis had violated the student code, and recommended his dismissal from the PA program.

## II. *Issues Presented*

Maxwell challenges the trial court's summary judgment ruling with two issues. Maxwell contends that the trial court abused its discretion by considering inadmissible summary judgment evidence and that the trial court erred by denying his motion for summary judgment.

## III. *Summary Judgment Evidence*

Willis's response to Maxwell's summary judgment motion included his own affidavit, excerpts of his deposition, and his answers to Maxwell's interrogatories. Maxwell objected to portions of that evidence. The trial court denied Maxwell's motion without specifically ruling on

Maxwell's objections. We presume, therefore, that it considered the challenged evidence. *Sunshine Mining & Ref. Co. v. Ernst & Young, L.L.P.*, 114 S.W.3d 48, 51 (Tex. App.—Eastland 2003, no pet.).

Maxwell complains that the trial court erred by not striking several paragraphs of Willis's affidavit because they interjected his uncorroborated subjective belief regarding Maxwell's motivation. We review the trial court's admission or exclusion of summary judgment evidence under an abuse of discretion standard. *Harris v. Showcase Chevrolet*, 231 S.W.3d 559, 561 (Tex. App.—Dallas 2007, no pet.). Affidavits containing unsubstantiated factual or legal conclusions or subjective beliefs that are not supported by evidence are not competent summary judgment proof because they are not credible or susceptible to being readily controverted. *Ryland Group, Inc. v. Hood*, 924 S.W.2d 120, 122 (Tex. 1996). Motive may be established by direct or circumstantial evidence. *See Willis v. Nucor Corp.*, 282 S.W.3d 536, 544 (Tex. App.—Waco 2008, no pet.). That evidence may not, however, consist solely of the plaintiff's subjective belief. *See Tex. Div.-Tranter, Inc. v. Carrozza*, 876 S.W.2d 312, 314 (Tex. 1994) (plaintiff's statement that he believed in good faith that he was terminated for filing a workers' compensation claim was not competent summary judgment evidence).

Willis testified in his affidavit that he was removed from the PA program because Maxwell disliked anyone who challenged him academically; that Maxwell improperly relied upon Paralkar's statement falsely accusing him of pointing a gun at her; that Maxwell told his fellow classmates that he had threatened a student with a firearm, that he was a dangerous individual, that they were not to contact him, and that they should contact the campus police if he did; that Maxwell's statements were false; that Maxwell acted in bad faith by not conducting a thorough investigation but instead only considered one side of the story; that Maxwell was not motivated by safety concerns because he waited over five days to meet with the students and that he was, instead, motivated by malice; and that Maxwell lied about his involvement in order to settle a grudge.

To determine if the trial court abused its discretion by considering Willis's affidavit, we consider the entire record. Maxwell's summary judgment evidence establishes the following:

- August 2, 2007. Ream received a call from McCoy reporting rumors that Willis was selling drugs, that he had threatened Paralkar with a gun, that he had taken her laptop and made derogatory changes to her *MySpace* page, and that he was following her. Ream reported this to Maxwell. He instructed her to contact the campus police to see if they had any records of these allegations

3

and to set up meetings with McCoy, Paralkar, and Willis for August 7 when he was scheduled to return to the office.

- August 3.   Ream contacted Campus Chief Gunn and learned that misdemeanor warrants had previously been issued for Willis but that there was no final disposition on those cases and that there was nothing for his department to get involved with.   Ream asked a staff member to schedule appointments with the three students and warned her that there was a potential for conflict between Willis and Paralkar so that she could advise the faculty. Ream relayed Chief Gunn's information to Maxwell.

- August 7, 8:00 am.  Maxwell met with McCoy.  She repeated her accusations and expressed concern for her safety.

- 9:00 am.   Maxwell met with Paralkar.   He asked for her response to the accusations against Willis.   She denied that Willis was selling drugs but confirmed that they had been involved in a relationship, that she had broken up with him, and that she had come to his house to retrieve her personal items. While she was there, he threatened her with a gun.   The police arrived and stayed while she collected her property, but she did not tell them that Willis had threatened her with a gun because she did not want to get him into trouble.   She drove away and then called the police and reported the gun allegation.   She did not report this incident to school officials because she did not want to get Willis kicked out of the program.   Paralkar told Maxwell that Willis normally carried a gun in his car console.

- 9:30 am.  Ream contacted Chief Gunn and asked him to be present for their meeting with Willis and to escort him from campus following that meeting.

- 11:00 am.   Maxwell met with Willis.   Two campus police officers were present.  Maxwell told Willis that he was aware of a police report involving Willis pointing a gun at Paralkar, that Willis was being dismissed from campus, that he was not to return to campus or PA program facilities, and that he was not to contact Paralkar or any other PA program students or faculty. Maxwell consented to a search of his vehicle by campus police.   They did not find a weapon.

- 1:00 pm.  Maxwell spoke with the PA program students and advised them that "Mr. Willis had been escorted from campus because of documentation that he pulled a gun on Ms. Paralkar."  Maxwell told the students that Mr. Willis was not to be on campus or to contact them.  He asked them to notify the police and advise the faculty if Willis did attempt to contact them.

- August 15.  Maxwell filed a complaint of misconduct against Willis.  Of significance to this appeal is the fact that Maxwell told the University that he first informed Willis of the allegations against him and asked him if he had any response and that Willis declined to make a response.  Maxwell then told

4

Willis to leave the campus and to avoid any other students or faculty until the situation was resolved by higher authorities. Maxwell also reported that the campus police asked for permission to search Willis's vehicle but Willis declined and that Midland College had banned Willis from the campus until his situation was resolved.

- May 27, 2009. Maxwell signed an affidavit in support of his motion for summary judgment. Of significance to this appeal is his statement that he advised the PA program students that Willis had been escorted off campus because of allegations that Willis pointed a gun at a fellow student but that he did not mention Paralkar by name. Maxwell testified that he met with the students and told them about Willis because of his concern for the safety and welfare of the students, faculty, and staff.

Maxwell's evidence corroborates much of Willis's affidavit. Willis was critical of Maxwell's investigation because he relied upon the statement of another student and did not conduct a thorough investigation. Maxwell's evidence confirms that he decided to remove Willis from the PA program after talking to McCoy and Paralkar but before speaking with Willis. Willis testified that the delay between McCoy's initial report and the decision to remove him belays any conclusion that Maxwell was motivated by a safety concern. Maxwell's evidence confirms that five days passed between McCoy's report and Maxwell's student meetings. In the interim, Maxwell asked Ream to check for police reports, but no student-safety steps were taken.

Willis testified that Maxwell lied about his involvement. There are several inconsistencies between Ream's documentation, Maxwell's complaint, and his summary judgment affidavit. According to Ream, when Maxwell met with Willis on August 7, he relayed the accusations that had been made and, without affording him a chance to respond, told Willis that he was being removed from the program. Conversely, Maxwell told the University that he first gave Willis a chance to respond to the accusations and that Willis declined to do so. Ream documented that Willis was asked for permission to search his car and that, while he was initially reluctant to do so, he did agree and that the officers reported to Maxwell that they found no weapon. Maxwell, however, told the University that Willis refused to consent to the search. Maxwell told the University that the campus police banned Willis from the campus. Ream's documentation makes clear that it was Maxwell's decision. In fact, Maxwell's summary judgment evidence included a letter dated August 21, 2007, from Chief Gunn to Willis informing him that Maxwell had lifted the trespass notice. Maxwell denied using Paralkar's name during

his meeting with the PA program students. But Ream documented that Maxwell told the students Willis had been removed "because of documentation that he pulled a gun on Ms. Paralkar."

The trial court did not abuse its discretion by considering Willis's affidavit testimony. It was more than just Willis's subjective beliefs, and his underlying factual statements were sufficiently corroborated by Maxwell's evidence.

Maxwell next argues that the trial court erred by considering hearsay statements in Willis's affidavit, specifically what Maxwell told the PA students since Willis was not present. The trial court did not err by considering this testimony because it was confirmed by Maxwell's own summary judgment evidence.

Maxwell argues that the trial court erred by considering Willis's interrogatory responses. We agree. TEX. R. CIV. P. 197.3 provides that interrogatory answers may only be used against the responding party. Finally, Maxwell contends that the trial court erred by considering Willis's deposition testimony where he described a conversation with Paralkar. Willis testified that Paralkar told him Maxwell threatened to remove her from the PA program if she did not tell him what was in the police report or if what was reported was not what happened. This is hearsay, and Willis offers no exception. The trial court, therefore, erred by considering it.

Maxwell's first issue is sustained in part and overruled in part. The trial court did not err by considering Willis's affidavit, but it did err by considering Willis's interrogatory answers and his deposition testimony concerning a conversation with Paralkar.

IV. *Summary Judgment*

Willis pleaded three causes of action against Maxwell: breach of student confidentiality, defamation, and denial of substantive due process. Maxwell originally raised official immunity as an affirmative defense to all three but, on appeal, acknowledges that this defense does not apply to Willis's student confidentiality or due process claims. Thus, our inquiry is limited to whether official immunity bars Willis's defamation claim.

Maxwell contends first that Willis presented no evidence that Maxwell defamed him because he tendered no evidence that Maxwell told the PA students Willis had been expelled or that he otherwise made a false statement. Ream's documentation, however, provides:

> Mr. Maxwell spoke with the class of 2008 to advise them that Mr. Willis had been escorted from campus because of documentation that he pulled a gun on Ms. Paralkar. He advised them that Mr. Willis was not to be on campus or to

6

contact them. He asked that if they were contacted, they were to contact the police and advise the faculty.

The trial court, therefore, had evidence that Maxwell told the PA students Willis had been expelled for pointing a gun at Paralkar.

Maxwell next argues that, as a matter of law, the doctrine of official immunity precludes Willis's defamation claim against him and, consequently, that the trial court erred by denying his summary judgment motion. Official immunity is an affirmative defense that protects a government employee from liability in a lawsuit when the employee (1) performs discretionary duties (2) within the scope of the employee's authority (3) provided the employee acted in good faith. *Univ. of Houston v. Clark*, 38 S.W.3d 578, 580 (Tex. 2000). Willis contends that Maxwell failed to carry his burden of proof to establish this defense as a matter of law.

A trial court must grant a motion for summary judgment if the moving party establishes that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c); *Lear Siegler, Inc. v. Perez*, 819 S.W.2d 470, 471 (Tex. 1991). In order for a defendant to be entitled to summary judgment, it must either disprove an element of each cause of action or establish an affirmative defense as a matter of law. *Am. Tobacco Co. v. Grinnell*, 951 S.W.2d 420, 425 (Tex. 1997). Once the movant establishes a right to summary judgment, the nonmovant must come forward with evidence or law that precludes summary judgment. *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678-79 (Tex. 1979). When reviewing a traditional summary judgment, the appellate court considers all the evidence and takes as true evidence favorable to the nonmovant. *Am. Tobacco Co.*, 951 S.W.2d at 425; *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548-49 (Tex. 1985). The appellate court "must consider whether reasonable and fair-minded jurors could differ in their conclusions in light of all of the evidence presented" and may not ignore "undisputed evidence in the record that cannot be disregarded." *Goodyear Tire & Rubber Co. v. Mayes*, 236 S.W.3d 754, 755, 757 (Tex. 2007).

Maxwell argues that investigating and acting on gathered facts are quasi-judicial actions involving the exercise of discretion, that his investigation of and response to McCoy's report was within the scope of his authority, and that he acted in good faith. Willis does not dispute that Maxwell exercised a discretionary duty but focuses on Maxwell's meeting with the PA students and contends that Maxwell acted outside the scope of his authority and in bad faith.

Maxwell presented the trial court with evidence of broad authority. He testified by affidavit that he is the Regional Dean for the School of Allied Health Sciences Midland Campus

and that he is responsible for the PA program. This includes the responsibility for security and personal safety for the students and faculty. Willis has not contested this authority but contends that it does not allow him to disclose confidential student records information in violation of the Family Educational Rights and Privacy Act (FERPA), 20 U.S.C. § 1232g, or to defame students.

We need not determine whether Maxwell violated FERPA because it is not dispositive of his defamation action. Maxwell communicated three facts to the PA students: (1) Willis had been expelled; (2) there was documentation that Willis threatened Paralkar with a gun; and (3) Willis should be considered dangerous. Maxwell's statement that Willis had been expelled was true. Likewise, Maxwell's reference to documentation that Willis pulled a gun on Paralkar is not defamatory because the Midland Police Department had, in fact, documented Paralkar's accusation.

If Maxwell defamed Willis, it was by telling the students that he was dangerous. Willis contends that Maxwell lacked the authority to do so because it was defamatory. That, however, speaks more to Maxwell's good faith than his authority. If we assume no educator has the authority to defame a student, that does not mean that they have no authority to communicate unresolved accusations of dangerous behavior to fellow students, faculty, or staff in the interest of their safety. The question is did Maxwell have the authority to warn the students in response to Paralkar's accusation? Maxwell testified that he had broad student-safety responsibility and authority and that he was acting within the scope of that authority when he met with the PA students. Willis did not challenge Maxwell's description of his authority or his right to alert the students to a safety concern posed by a fellow student. Maxwell, therefore, established that he was acting within the scope of his authority.

The final inquiry is whether Maxwell acted in good faith. To determine if a public official acted in good faith, we use an objective standard, asking whether a reasonably prudent official, under the same or similar circumstances, could have believed that his conduct was justified based on the information he possessed when the conduct occurred. *Joe v. Two Thirty Nine Joint Venture*, 145 S.W.3d 150, 164 (Tex. 2004). The standard of good faith with respect to official immunity is not a test of carelessness, negligence, or motivation and does not inquire into what a reasonable person "*would have done*" but what a reasonable person "*could have believed.*" *Ballantyne v. Champion Builders, Inc.*, 144 S.W.3d 417, 426 (Tex. 2004).

Maxwell was presented with conflicting evidence on what happened between Willis and Paralkar. Willis denied pulling a gun, and Paralkar provided inconsistent statements to the police

8

and withheld information from the University. But she told the police Willis had threatened her with a gun and repeated that accusation to Maxwell. A reasonable person could have believed her. In addition to the credibility resolution that normally defies unilateral assessment, Maxwell knew that warrants had previously been issued against Willis for criminal mischief and deadly conduct and that, earlier in the year, he had been arrested for disorderly conduct. A reasonable person could have also considered that Willis was accused of life-threatening conduct directed at a fellow student and determined that the other students' safety considerations outweighed Willis's privacy concerns.

Maxwell may have subjectively been motivated by improper concerns, but he established that a reasonable public official could have made the same decision as did he. We note that Willis tendered evidence questioning Maxwell's motivation and whether he made the right decision, but no evidence in support of the proposition that no reasonable person could have believed Paralkar or determined that Willis posed a safety risk. *See Crouch v. Trinque*, 262 S.W.3d 417, 422 (Tex. App.—Eastland 2008, no pet.) (if defendant meets its burden to establish official immunity, plaintiff must come forward with controverting evidence).

Because Maxwell established his official immunity affirmative defense to Willis's defamation cause of action, the trial court erred when it denied his motion for summary judgment. Maxwell's second issue is sustained.

## V. *Conclusion*

The judgment of the trial court is reversed. Judgment is rendered that Willis take nothing on his defamation claim. This case is remanded to the trial court for consideration of Willis's remaining causes of action. We express no opinion on those claims.


RICK STRANGE

JUSTICE


May 6, 2010

Panel consists of: McCall, J.,
Strange, J. , and Boyd, S.J.[1]

---

[1]John T. Boyd, Retired Chief Justice, Court of Appeals, 7th District of Texas at Amarillo, sitting by assignment.