Opinion issued August 18, 2011.



In The

Court of
Appeals

For The

First District
of Texas

————————————

NO. 01-10-00649-CV

———————————

Southern Electrical Services, Inc. as Assignee of the Morganti
Group, Inc.,
Appellant

V.

The City of
Houston, Appellee



 



 

On Appeal from the 157th Judicial District Court  

Harris County, Texas



Trial Court Case No. 2005-35287

 



 

OPINION
ON MOTION FOR REHEARING

          In
this government contract dispute, Southern Electrical Services, as assignee of the Morganti Group,
Inc., (SES) sued the City of Houston for breach of contract and violation of
the Prompt Payment Act.  The trial court
granted summary judgment in favor of the City. 
SES appeals, contending that the trial court erred in granting the
City’s summary judgment motion because: (1) a genuine issue of material fact
exists as to whether the City is liable for breach of contract and interest
owed under the Prompt Payment Act; (2) section 271.153 of the Texas Local
Government Code does not bar SES’s damages; and (3) the City failed to
establish any of its affirmative defenses as a matter of law.  On May 5, 2011, we issued an opinion affirming the judgment
of the trial court.  SES filed a motion
for rehearing and a motion for en banc reconsideration.  We grant the motion for rehearing, withdraw
our opinion issued May 5, 2011, and issue this opinion in its stead.  We overrule the motion for reconsideration en banc as moot.[1] 
Our disposition is unchanged. 

Background

          The City sought bids from companies to construct a new
central concourse at the William P. Hobby Airport. Morganti bid to be a general
contractor on the project.  Morganti, in
turn, requested bids from subcontractors to perform work on the project, and
SES, as a subcontractor, prepared its bid for its portion of the project based
on a “prevailing wage rate” scale that the City provided to the bidders in its
bid documents.  Both under the contract
and by statute, the City required its contractors and subcontractors on the
project to pay their employees at or above the local prevailing wage rate.[2]  See Tex.
Gov’t Code Ann.                   
§§ 2258.001–.026 (West 2008).  The
City subsequently awarded SES and Morganti “lump sum” contracts to perform the
work.  

          The contract between the City and
Morganti provides in relevant part,

 

1.1     Contractor
shall execute the Work in accordance with the Contract Documents,
except to the extent specifically indicated in the Contract Documents to be the
responsibility of others, or as
otherwise provided herein.

. . . . 

3.1     Subject to the terms and conditions of the
Contract Documents, City shall pay Contractor in current funds for
Contractor's performance of the Contract, the Contract Price of
[$77,039,273.86].

 

          Attached
to and incorporated into the contract were additional “general conditions” and
“supplementary conditions,” which provide, in relevant part:

1.1 BASIC DEFINITIONS

. . . . 

1.1.5  Contract:
The Contract Documents form the
Contract for Work. The Contract represents the entire and integrated
agreement between parties and supersedes prior negotiations, representations or
agreements, either written or oral. The
Contract may be amended or modified only by a Modification . . . . 

 

1.1.6  Contract
Documents: The Agreement between the
City and Contractor, the portions of the Contractor’s Bid attached to the
Agreement, and any post-bid documentation submitted prior to the
execution when attached to the Agreement . . . the Conditions of the Contract, ... appropriate addenda . . . and
other documents as they are specifically enumerated in the Agreement, plus
Modifications.

 

1.1.12 Modification: A Modification to
the Contract Documents, issued after the Effective Date of the Agreement, is a Change Order, a Work Change Directive,
or a written order for a minor change in the Work issued by the City Engineer.

. . . . 

1.2     Execution, correlation and intent 

. . . . 

1.2.2  Execution
of the contract by the Contractor is conclusive that the Contractor has
carefully examined the Contract Documents, visited the site of the Work, become
familiar with local conditions under which the Work is to be performed, and
fully informed itself as to conditions under which the Work is to be performed,
and fully informed itself as to conditions and matters which can affect the
Work or costs thereof. . . .

. . . . 

3.6     PREVAILING
WAGE RATES

 

3.6.1  Contractor shall comply with the governing
statutes providing for labor classification of wage scales, as stipulated in
Document 00800-Supplementary Conditions,
for each craft or type of laborer, worker, or mechanic.

 

3.6.1.1  Prevailing wage rates applicable to the Work
shall be as stated in the Agreement, and as bound by in the Project Manual.

 

3.6.1.2 The
prevailing wage rates applicable to the Work shall be Document 00812-Wage
Scale/Engineering/FAA, as bound in the Project Manual. Documents 00811 and
00813 shall not apply.

 

3.6.2  Each
week the Contractor shall submit to the City Affirmative Action and Contract
Compliance Division, certified copies of payrolls showing classification and
wages paid by the Contractor and all Subcontractors for each employee working
on the Project for any day included in the Contract.

. . . . 

5.3     Contractor Responsibility for Subcontractors

. . . . 

5.3.2 By written agreement, Contractor
shall require each Subcontractor, to the extent of the work to be performed by
the Subcontractor, to be bound to the Contractor by the terms of the Contract
Documents . . . .  

 

          Document
00812 is an addendum to the contract, showing a scale of wage rates to be paid
to different types of employees. 
Document 00812 states that employers should use the wage rates as the
minimum wage for their employees, and the rates do not prohibit payment of higher
wages.  SES’s subcontract expressly
incorporated the contract between the City and Morganti.  

          After
SES entered into the subcontract, the City amended its minimum prevailing wage scales
and certified the higher wage scales, reflected in Document 00813.  The 00813 rates similarly do not prohibit a
contractor’s payment of higher wages to his employees.  After a dispute arose about the switch, in a
letter sent to Morganti, the City wrote that it would reimburse the Hobby
Airport contractors and subcontractors for variances between the 00812 rate and
the 00813 rate.  In response to the
letter, Morganti requested the difference between the rates on behalf of itself
and its subcontractors, including SES. 
The City denied the claim.  It
took the position that the switch to the 00813 rate did not harm Morganti and
SES because none of their employees received a wage increase due to the switch.  SES’s president admitted that SES did not
change the rates it paid its employees on account of any communications from
the City.  SES timely completed its
performance under the contract and received payment.  

           SES, as an assignee of Morganti,
filed this breach–of–contract suit against the City, alleging that in providing
incorrect wage scales in the contract documents, the City breached the
contract.[3]  In its seventh amended petition, SES alleges
that both the 00812 rate and the 00813 rate are incorrect wage scales.  SES seeks the difference in the wages under
the incorrectly certified wage scales provided in the documents and the correct
prevailing wage scale plus prompt payment of interest.  Both parties moved for summary judgment in
the trial court.  The trial court denied SES’s motion and granted
the City’s motion.  

Discussion

Standard of Review

          We
review de novo the trial court’s ruling on a motion for summary judgment. 
Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding, 289 S.W.3d
844, 848 (Tex. 2009).  A court must grant a traditional motion
for summary judgment if there is no genuine issue as to any material fact and
the moving party is entitled to judgment as a matter of law on the issues
expressly set out in the motion or in an answer or in any other response. See
Tex.
R. Civ. P. 166a(c). We review the evidence
presented by the summary judgment record in a light most favorable to the party
against whom the summary judgment was rendered, crediting evidence favorable to
that party if reasonable jurors could and disregarding contrary evidence unless
reasonable jurors could not. Mack Trucks, Inc. v. Tamez, 206 S.W.3d 572, 582 (Tex. 2006)
(citing City of Keller v. Wilson,
168 S.W.3d 802, 827 (Tex. 2005)). When both sides move for summary judgment,
and the trial court grants one motion and denies the other, the reviewing court
considers both sides’ summary judgment evidence and determines all issues
presented.  Valence Operating Co. v.
Dorsett, 164 S.W.3d 656,
661 (Tex. 2005).        Where
the trial court does not specify the grounds for its summary judgment, the
party challenging the order must show that each of the independent arguments
alleged in the motion is insufficient to support the order. Hudiburg
Chevrolet, Inc. v. Gen. Motors Corp.,
114 S.W.3d 680, 684 (Tex. App.—Dallas 2003), modified, 199 S.W.3d 249 (Tex. 2006); Williams
v. City of Dallas, 53
S.W.3d 780, 784 (Tex. App.—Dallas 2001, no pet.).  The reviewing court must affirm the summary
judgment if any of the theories presented to the trial court and preserved for
appellate review are meritorious.  Provident
Life & Accident Ins. Co. v. Knott,
128 S.W.3d 211, 215 (Tex. 2003). 

Breach
of Contract 

          SES
contends that the trial court erred in denying its summary judgment motion and
granting the City’s motion because, at the least, a fact issue exists as to
whether the City is liable under the contract. 
The City responds that SES’s breach of contract claim fails as a matter
of law because its alleged breach did not cause damage to SES.  

          1) Applicable Law 

          To prevail on a claim for breach of
contract, the plaintiff must establish the following elements: (1) the
existence of a valid contract; (2) performance or tendered performance by the
plaintiff; (3) breach of the contract by the defendant; and (4) damages
sustained by the plaintiff as a result of the breach.  Wright v. Christian & Smith, 950 S.W.2d 411, 412 (Tex.
App.—Houston [1st Dist.] 1997, no writ). 
To recover compensatory damages, the plaintiff must prove that he
suffered some pecuniary loss as a result of the breach. Abraxas Petroleum
Corp. v. Hornburg, 20
S.W.3d 741, 758 (Tex. App.—El Paso 2000, no pet.); Multi-Moto Corp. v. ITT Comm.
Fin. Corp., 806 S.W.2d 560,
569 (Tex. App.—Dallas 1990, writ denied).  Such losses must be the natural, probable, and
foreseeable consequence of the defendant’s conduct.  Mead v. Johnson Group, Inc., 615 S.W.2d 685, 687 (Tex. 1981)
(citing Hadley v. Baxendale,
9 Exch. 341, 354 (1854)); see, e.g., Stuart v. Bayless, 964 S.W. 2d 920, 921
(Tex. 1998) (holding that loss of contingency fees that lawyers might have
earned from other clients was not foreseeable and directly traceable to
clients’ failure to pay amounts due under contract); Swanson v. Wells Fargo Home Mortg., No. 14-02-00732-CV, 2003 WL
22945646, at *3 (Tex. App. —Houston [14th Dist.] Dec. 16, 2003, no pet.) (mem. op.) (holding that alleged “damage”
to borrower, i.e. lack of leverage
against builder, was not foreseeable consequence of lender’s purported breach
of loan agreement because no contractual provision existed that lender should
withhold monies to give borrower “leverage”). 


          Further, a party may not recover
damages for breach of contract if those damages are remote, contingent,
speculative, or conjectural.   City of Dallas v. Vills. of Forest Hills,
L.P., Phase I, 931 S.W.2d 601, 605 (Tex. App.—Dallas 1996, no writ); see
also Westech Eng’g, Inc. v.
Clearwater Constructors, Inc., 835 S.W.2d 190, 205 (Tex. App.—Austin 1992,
no writ) (holding that plaintiff’s consequential damages were too speculative
because no evidence connected damages to defendant’s breach of contract); A.B.F.
Freight Sys., Inc. v. Austrian Import Serv., Inc., 798 S.W.2d 606, 615 (Tex. App.—Dallas 1990, writ denied) (holding
that no recovery exists for speculative damages).  Thus, the absence of a causal connection
between the alleged breach and the damages sought will preclude recovery.  Prudential Sec., Inc. v. Haugland, 973 S.W.2d 394, 397 (Tex. App.—El
Paso 1998, pet. denied).  Compare Abraxas Petroleum Corp., 20 S.W. 3d at 758 (holding that legally and factually sufficient
evidence existed that breach by operator of oil lease caused damages to working
interest owners because, on account of breach, operator seized owners’ interest
and withheld earnings) with Clearview
Props., L.P. v. Prop. Texas SC One Corp., 287 S.W.3d 132, 139–40 (Tex.
App.—Houston [14th Dist.] 2009, pet. denied) (holding that plaintiff’s failure
to secure financing for deal caused its damages, rather than any action by
defendant in breach of contract claim) and
Tidwell Props., Inc. v. Am. First Nat’l
Bank, No. 14-04-00120-CV,
2006 WL 176862, at *3 (Tex. App.—Houston [14th Dist.] Jan. 26, 2006, no pet.)
(mem. op.) (holding that defendant’s failure to disclose sublease did not cause
breach–of–contract damages because plaintiff’s deal fell through for reasons
independent of failure to notify plaintiff).  
\

 

          2) Analysis 

          Here, SES maintains that it suffered
damages in the form of increased labor costs because it used the contract’s
incorrect prevailing wage schedules, which the City’s bid documents designated,
in calculating its bid for the project and determining its lump sum contract
price for the project.  According to SES,
the City’s breach—i.e., specifying the incorrect rate in the bid documents—caused
these damages.  SES offered evidence that
its representatives relied on the incorrect rate in formulating SES’s bid on
the project.  It also offered damage
models showing the difference between its actual costs and the costs it would
have incurred had the rate been capped by the allegedly correct prevailing rate.     

          SES
has failed to raise a fact issue that it suffered any damages as a foreseeable
result of the City’s alleged breach.  See Swanson, 2003 WL 22945646, at *3
(affirming defendant’s summary judgment on ground that plaintiff’s damages did
not result from defendant’s alleged breach); see also Stuart, 964 S.W. 2d at 921.  The
00812 and 00813 prevailing rates provided by the City were minimum rates.  For each
rate, the contract expressly specified that an employer may pay more than the
proscribed amount.  The Texas Government
Code also states that it does not prohibit the payment of an amount greater
than the general prevailing rate to a worker employed on public work.  See Tex. Gov’t Code Ann. § 2258.025; see also Houston Gulf Coast Bldg. &
Constr. Trades Council, 710 S.W.2d at 183 (holding that the purpose of
predecessor Texas wage rate statute was to ensure that workers on public
projects receive not less than prevailing rate).  A duty to provide a correct minimum rate does
not make the City a guarantor that an employer hires employees at that
rate.  See United States v.
Binghamton Constr. Co.,
347 U.S. 171, 178, 74 S. Ct. 438, 442 (1954) (holding that federal prevailing
wage rate statute’s requirement that contractor pay not less specified minima presupposes
possibility that successful bidder may have to pay higher rate to workers and
that bidder’s reliance on government’s representation of prevailing rate in
computing its bid cannot be said to have been justified).  According to section 1.2.2 of the contract, Morganti
had a duty to “become familiar with local conditions under which the Work is to
be performed, and fully informed itself as to conditions under which the Work
is to be performed . . . and matters which can affect the Work or costs thereof.”  The contract thus anticipates that Morganti
and its subcontractors bear the risk associated with the costs to perform under
the contract.  Additionally, under SES’s
subcontract, SES declared that “it ha[d] investigated all pertinent conditions
relative to the performance of the work contained in this Agreement, knowing
the character, quantities and sources of materials to be used in performing the
work, [and] the labor conditions prevalent in the area in which the work is to
be performed.”  SES does not seek the
difference between the 00812 rate and the 00813 rate as damages.  Cf.
Morrison-Hardeman-Perini-Leavell v. United
States, 392 F.2d 988, 997 (Ct. Cl. 1968) (noting that contractor can
recover against government, where government directed contractor to pay, both
retroactively and in future, new higher minimum prevailing rate).    Rather, SES seeks the difference between
its actual costs and the prevailing rates specified in the contract capped at a
rate the City never asked SES to pay. 
SES received the benefit of its bargain; it was required to pay a
prevailing wage to its workers as a minimum
in exchange for the lump sum amount under the contract.  That SES paid its workers amounts that
exceeded both of those minimums is a separate matter that the contract leaves
to SES’s discretion, and it does not obligate the City to assume the cost of
those rates.      

           In response, SES points out that the contract
relieved it of any duty to verify that the prevailing wage rates that the City
provided were correct.  It cites section
3.12.3 of the agreement:  “It is not the
Contractor’s responsibility to ascertain that the Contract Documents are in
accordance with applicable laws, statutes, ordinances, building codes, and
rules and regulations.”  Although SES had
no duty to verify that the prevailing wage rates were in accordance with the
law, SES had a duty, as we note above, under the contract to know local
conditions and matters affecting cost, which would include labor.  Section 3.12.3 does not relieve SES of this
duty.  SES further asserts that the case
law supports its contention that it can recover damages from the City for providing
the incorrect prevailing wage rate even though the contract required SES to
investigate local conditions and know matters affecting cost.  See Shintech
Inc. v. Group Constr., Inc., 688 S.W.2d 144, 150 (Tex. App.—Houston [14th
Dist.] 1985, no writ) (holding that contractor could recover damages from owner
for losses due to delay, although contractor agreed to assume responsibility
for timely completing work for agreed compensation, because owner agreed to be
liable for causing delays in contractor’s work schedule); IT Corp. v. Motco Site Trust Fund, 903 F. Supp. 1106, 1121–22 (S.D.
Tex. 1994) (holding that contractor could recover damages from owner for misrepresenting
site conditions despite contractor’s right to investigate site before bidding because
owner represented that data it included in contract was sufficient information
for contractor to prepare its bid); see
also MasTec N. Am., Inc. v. El Paso Field Servs., L.P., 317 S.W.3d 431, 456
(Tex. App.—Houston [1st Dist.] 2010, pet. filed) (holding that contractor was
not precluded from recovering damages against owner for defective
specifications stated in contract, notwithstanding lump-sum and pre-bid
investigation provisions in contract, because owner made positive assurances
concerning reliability of said specifications). 
We reject SES’s reliance on these cases. 
Here, the City provided a minimum rate that SES had to pay its workers,
but made no positive assurances that SES could hire workers at this rate.  The City never represented that SES should
calculate its labor costs for its bid based on the rate the City provided.  

We hold that the
alleged damages to SES—increased labor costs—were not a foreseeable consequence
of the City’s alleged breach of the contract because the contract did not allocate
the risk of increased costs to the City. 
Accordingly, we affirm the trial court’s grant of summary judgment for
the City on the breach–of–contract claim. 

Prompt Payment Act Claim 

          SES asserts that the trial court erred
in granting summary judgment on the City’s liability for prompt payment of interest.
 The Prompt Payment Act provides that if a governmental
entity does not make timely payments under a contract with a vendor of goods or
services, the vendor may suspend performance and recover interest accruing on
any undisputed late payments.  See Tex.
Gov’t Code Ann.   §§ 2251.025,
2251.051 (West 2008).  Here, undisputedly
SES received the full payment as specified in its subcontract.  In its petition, SES does not claim that the
City failed to pay it for any goods or services provided.  Rather, SES contends that the City owes it
additional payment under the contract because of its breach of contract plus
prompt payment of interest on this additional payment.  Our holding that SES’s breach of contract
claim lacks merit renders the Prompt Payment Act inapplicable.  The trial court therefore correctly rejected
SES’s Prompt Payment Act Claim.     

 

Conclusion

          We
grant SES’s motion for rehearing and deny all other pending motions as
moot.  We hold that (1) SES failed to
raise a material fact issue that the City’s contractual breach caused damages to SES, and (2) SES’s
claim for interest under the Prompt Payment Act fails as a matter of law.  Accordingly, the trial court properly granted
summary judgment.  We therefore affirm
the judgment of the trial court.  

 

 

                                                                   Jane
Bland

                                                                   Justice


 

Panel
consists of Chief Justice Radack and Bland.[4]











[1]           See
Brookshire Brothers, Inc. v. Smith,
176 S.W.3d 30, 33 (Tex. App.—Houston [1st Dist.] 2004, pet. denied) (op. on
reh’g) (noting that motion for en banc reconsideration becomes moot when panel
issues new opinion and judgment).





[2]           Contractors
         are required to pay in accordance
with the wage rates only if the government          entity
provides them, and the public body’s determination of the general prevailing
rate of per diem wages is final. See Tex. Gov’t Code Ann. §§ 2258.022(e),
2258.023(c) (West 2008); see also Tex. Hwy. Comm’n v. El Paso Bldg. &
Constr. Trades Council, 234 S.W.2d 857, 863 (Tex. 1950) (interpreting
predecessor prevailing wage rate statute and holding that determination of rate
by highway commission was “final and not reviewable by the courts); City of Houston v. Houston Gulf Coast Bldg.
& Constr. Trades Council, 710 S.W.2d 181, 184 (Tex. App.—Houston [1st
Dist.] 1986, writ ref’d n.r.e.) (holding that city’s determination of
prevailing wage rate was final and not subject to judicial review under
predecessor statute).  But see Associated Gen. Contractors of Tex.,
Inc. v. City of El Paso, 879 S.W.2d 318, 320 (Tex. App.—El Paso 1994, no
writ) (holding that trial court had subject matter jurisdiction to determine
whether city violated prevailing wage rate statute by failing to use one of two
methods listed in statute to determine prevailing rate).  





[3]         This is
the third appeal of this case.  Morganti
initially was a party to this suit against the City and the first two appeals.  In the first appeal, we reversed the trial
court’s order denying the City’s plea to the jurisdiction and remanded the case
in light of Tooke v. City of Mexia,
197 S.W.3d 325, 342 (Tex. 2006).  See City of Houston v. S. Elec. Servs, Inc., No. 01-06-00015-CV, 2006 WL 3513691, at *3 (Tex.
App.—Houston [1st Dist.] Dec. 7, 2006, no pet.) (mem. op.).  In
the second appeal, we concluded that the trial court had subject matter
jurisdiction and affirmed the trial court’s order on interlocutory appeal.  See City of Houston v. S.
Elec. Servs, Inc., 273 S.W.3d 739,
745 (Tex. App.—Houston [1st Dist.] 2008, pet. denied).  Prior
to this appeal, Morganti and all of its subcontractors except SES settled with
the City.    





[4]           Justice Alcala was a member of the
original panel but has resigned in the interim.  The two remaining
justices ruled on this motion.  See
Tex. R. App. P. 49.3(b).